**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Augustine Ybarra ORTIZ,
Defendant-Appellant.**

No. 78–2796.

United States Court of Appeals,
Ninth Circuit.

Aug. 7, 1979.

Rehearing Denied Sept. 14, 1979.

John William Lovell, Gaynes, Lovell & Rockafellow, P. C., Tucson, Ariz., for defendant-appellant.

Stephen M. Dichter, Asst. U. S. Atty., Tucson, Ariz., Michael D. Hawkins, U. S. Atty., Tucson, Ariz. (argued), for plaintiff-appellee.

Before CARTER and GOODWIN, Circuit Judges, and ROBERT F. PECKHAM, District Judge.*

JAMES M. CARTER, Circuit Judge:

Ortiz appeals from a conviction on two counts of an indictment: conspiracy to distribute and to possess with intent to distribute heroin, and knowingly and intentionally possessing heroin with intent to distribute, all in violation of Section 401 of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 841(a)(1) (1970). Although tried together with other defendants, Ortiz appeals separately for reasons explained more fully below.[1] He claims here that he was improperly joined and that his motion to sever was improperly denied, that he was improperly denied a continuance, that his motions to suppress certain evidence should have been granted, that evidence against him was insufficient to support conviction, that he was unfairly prejudiced by juror statements during *voir dire* and by prosecutorial questioning of certain witnesses, and that he should have been sentenced by the same judge who tried him. We find no merit to his contentions and we affirm.

DISCUSSION

1. *Joinder and Severance*

Ortiz was one of nineteen persons charged with participating in the heroin conspiracy. Ten, including Ortiz, were eventually brought to trial. Ortiz argues that because the evidence did not link him with most of the other defendants, it was improper to have been joined with them at trial. Alternatively, he contends that his trial should have been severed when, according to him, it became apparent his involvement with the others was minimal.

The indictment alleged that Ortiz participated in the same series of acts or transactions as other defendants. Thus joinder was proper under Rule 8(b), Fed.R.Crim.P. The trial judge has broad discretion under Rule 14, Fed.R.Crim.P., to grant or deny motions for severance, and denial of such a motion will be reversed only after an appellant has met the heavy burden of showing the trial judge abused that discretion. *United States v. Smith,* 563 F.2d 1361 (9th Cir.), *cert. denied,* 434 U.S. 1021, 98 S.Ct. 747, 54 L.Ed.2d 769 (1977); *United States v. Figueroa-Paz,* 468 F.2d 1055 (9th Cir. 1972). We have reviewed the trial judge's ruling in light of the evidence and find no such abuse.

2. *Denial of Continuance*

Ortiz moved for a continuance on the day before the trial was to begin and he argues that denial of that motion violated his due process rights. He reaches that conclusion by claiming that he did not have enough time to examine grand jury transcripts and witness statements which were released six days before the trial date.

Here again, the trial judge possesses broad discretion to grant or deny motions for continuance. Absent a clear showing of abuse, we will not overturn a denial of such a motion. *United States v. Beaty,* 465 F.2d 1376 (9th Cir. 1972). The facts reveal that Ortiz had in his possession well in advance of the trial a detailed summary of the evidence which the government intended to present. Despite the fact that neither the Jencks Act nor the Federal Rules of Criminal Procedure require the release of information of the type Ortiz sought before trial,

* Honorable Robert F. Peckham, Chief United States District Judge, Northern District of California, sitting by designation.

1. Convictions of three codefendants were affirmed by unpublished memorandum in *United States v. Valenzuela-Lopez,* (9th Cir., December 18, 1978).

the government did release it. Thereafter, Ortiz had a total of thirteen days in which to study the grand jury transcripts and witness statements before he had to begin his defense. Under these circumstances, Ortiz has failed to demonstrate any prejudice whatsoever to his ability to defend himself, and we hold the trial court did not abuse its discretion in denying the motion.

3. *Suppression of Evidence; Sufficiency of Evidence*

The evidence most damaging to Ortiz' defense consisted of testimony relating to the seizure of heroin at a service station operated by Ortiz. The circumstances of the seizure were as follows: Ortiz, Peter Valenzuela-Lopez (the "ringleader" of the conspiracy) and Carlos Canales (an unindicted coconspirator) were observed by one Gomez, a police officer, gathered around a table in the front part of the service station. The room in which they were located was exposed to observation from the street by large windows. On the table was a jar containing folded papers. After a period of observation from a distance of about twenty feet, Gomez became convinced that a drug transaction was taking place, and he approached the station. The trio saw him coming, and after he identified himself as a policeman, they ran in different directions to escape. Canales grabbed the jar containing the papers and ran into the back room of the station, while Lopez and Ortiz ran outside. Gomez chose to follow Lopez, but lost sight of him before he could reach the street. Gomez then returned to the station where he found Canales in the rear near a fence. He arrested him, called for assistance, and initiated a warrantless search for the jar containing the papers. A short time later, the jar containing 32 to 36 papers of heroin was found under a couch in the back room. Although the heroin was later destroyed, a chemist was allowed to testify as to the results of his testing. Gomez testified as to his observations, and Canales also testified concerning the fact that Lopez was transferring the heroin to Ortiz for resale.

Ortiz argues that the warrantless search and seizure of the heroin violated his Fourth Amendment rights and that all testimony resulting from that seizure was "fruit of the poisonous tree"—the illegal search—and should have been suppressed. He also argues that even if the search and seizure were legal, the chemist's testimony must still be suppressed because the destruction of the heroin made it impossible to properly cross-examine the witness as to the accuracy of his tests. We disagree.

■ It cannot be seriously disputed that officer Gomez had the right to be where he was when he observed the heroin transaction. His discovery of the heroin was therefore not a "search" within the meaning of the Fourth Amendment, and there was no violation to that extent. *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *United States v. Finnegan,* 568 F.2d 637 (9th Cir. 1977). Having lawfully observed the heroin, his suspicions were reasonably aroused, and had the situation remained stable, he would have been entitled to seize the heroin and arrest the three men, all without a warrant. *E. g., United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Ker, supra; United States v. Blalock,* 578 F.2d 245 (9th Cir. 1978); *Finnegan, supra.* Before he could do so, however, Canales grabbed the jar containing the heroin and ran from the room. The question thus becomes, whether the "plain view" exception to the warrant requirement was thereby extinguished. We think not.

In a conceptually similar case, the District of Columbia Circuit upheld the warrantless seizure of evidence (drugs) that had been hidden between the time the police first observed them in "plain view" and when they returned with reinforcements to arrest those in possession and seize the goods. *United States v. Johnson,* 182 U.S. App.D.C. 383, 395–396, 561 F.2d 832, 844–845 (1977) (en banc), *cert. denied,* 432 U.S. 907, 97 S.Ct. 2953, 53 L.Ed.2d 1080 (1977). With respect to the scope of that search, the court said:

"When the police had seen a crime actually in progress with contraband in plain view, upon entry into the premises they

were fully authorized both to make arrests *and to seek out the contraband.* . . . [T]hey found that contraband in the immediate vicinity of the arrests and in the close environs of the point where it had first been seen, albeit hasty efforts at concealment had, as the police had every reason to anticipate, been made. Whether the search power in this instance be viewed as incident to arrest, or as deriv[ed] independently from the initial observation of the contraband, the materials in issue here appear to have been sufficiently within its sweep to defeat any faulting of the District Court on a plain error basis."

182 U.S.App.D.C. at 395–396, 561 F.2d at 844–45 (emphasis supplied).

We agree with the District of Columbia Circuit and hold that the police were entitled to search for and seize the jar containing heroin under the "plain view" exception to the Fourth Amendment warrant requirement. Because the search and seizure were legal, there were no "poisonous fruits" and the testimonies of Canales and Gomez were properly admitted.

■ We also reject Ortiz' contention that the destruction of the seized heroin prior to the trial compelled suppression of the chemist's testimony as to the results of his tests on the contents of the jar. Applying the balancing test recently announced by this court in *United States v. Loud Hawk,* (9th Cir. 1979) (en banc), we note first that federal officials were not involved at all in the (apparently inadvertent) destruction of the heroin. It was done by the local police while the substance was in their custody. There is therefore no hint of bad faith, collusion or culpability on the part of federal officials. The second factor to be weighed is the extent to which Ortiz was prejudiced by the destruction. It is true, as he argues, that he was deprived of the opportunity to test the chemical make-up of the substance for himself. He was able, however, to question the chemist who performed the tests on the correctness and reliability of the procedures that were followed, and to challenge the veracity of the results. This was an advantage to some extent because Ortiz was able to call into question the correctness of the chemical analysis without being handicapped by the threat of further tests being performed so as to remove all doubt in the eyes of the jury. *See Munich v. United States,* 363 F.2d 859 (9th Cir. 1966), *cert. denied,* 386 U.S. 974, 87 S.Ct. 1167, 18 L.Ed.2d 135 (1967). Finally, although the chemist's testimony was important in persuading the jury of Ortiz' guilt, it was not the only evidence against him. Canales gave credible testimony which identified the substance being transferred as heroin. Under the circumstances, whatever prejudice Ortiz suffered was minimal, and we affirm the denial of the motion to suppress.

■ We also conclude, after having reviewed the testimony and evidence against Ortiz, that there was sufficient evidence to sustain his conviction on the conspiracy count. The credibility of the witnesses—particularly of Canales—was a factor which the jury was best able to decide, and it apparently found him believable. Ortiz does not convince us that this was plain error.

### 4. *Juror and Prosecutorial Misconduct*

■ Ortiz claims that the following statement by a prospective juror during *voir dire* required declaring a mistrial:

"I don't like heroin. I'm kind of prejudiced. I hate the stuff and what it does. I honestly don't know if I could be fair or not. If I had my way, I would hang them if they were guilty."

The juror was dismissed from the case. Under such circumstances, it is Ortiz' burden to show that he was prejudiced by such a statement. *See United States v. White,* 524 F.2d 1249 (5th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375 (1975). Ortiz has failed to show how this isolated statement prejudiced him, and he cites no authority otherwise requiring reversal. We decline to do so.

■ Ortiz also cites as reversible error the fact that on two occasions while questioning government witnesses, the prosecu-

tor suggested that the witness was or could be afraid of some or all of the defendants. This, he claims, allowed the jury to speculate that he was a violent man, and he was thereby unduly prejudiced. A review of the transcripts shows that both instances involved fairly brief exchanges which were cut off by the judge. They did not reveal to the jury facts about the defendants which were not admissible, cf. *United States v. White,* 355 F.2d 909 (7th Cir. 1966) (defendant's prior conviction), nor did they involve misstatements or statements of facts outside the record. *Cf. United States v. Newman,* 490 F.2d 139 (3d Cir. 1974). Rather, they involved statements which arguably invited conjecture. In light of the care with which the trial judge limited the questioning and the fact that the prosecutor made no attempt to exploit the fears which the witnesses may have had of the defendants, we hold that the prosecutor's questions were, at most, harmless error.

5. *Sentencing*

 Ortiz' final claim of error concerns the fact that he was sentenced by a judge other than the one who presided at trial. This claim borders on the whimsical. The facts show that on the date set for sentencing, Ortiz failed to appear. Bond was forfeited and a bench warrant was issued. Meanwhile, Judge Belloni, who was visiting from the District of Oregon and assisting in Arizona, returned to his home district. Some months later, Ortiz was arrested and came before Judge Frey of the District of Arizona for sentencing. He objects now on due process grounds to the fact that Judge Belloni was not called in to pass sentence.[2]

Rule 25, Fed.R.Crim.P., allows a judge other than the trial judge to pass sentence if the trial judge is unavailable. The Rule was held constitutional in *Connelly v. United States,* 249 F.2d 576 (8th Cir. 1957), *cert. denied,* 356 U.S. 921, 78 S.Ct. 700, 2 L.Ed.2d 716 (1958). Judge Belloni, having returned

to Oregon to assume his duties there, was unavailable, and it was entirely proper for the regular judge of the district to pass sentence. *See United States v. McCallie,* 554 F.2d 770 (6th Cir. 1977). Of particular importance is the fact that Judge Frey was familiar with all aspects of the case, and his exercise of Rule 25 discretion in passing sentence on Ortiz was informed. *See Carbo v. United States,* 314 F.2d 718 (9th Cir. 1963), *cert. denied,* 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964). The procedure followed was entirely proper, and Ortiz waived whatever claim he has to equitable consideration when he failed to appear on the original sentencing date.

The conviction is AFFIRMED.

---

**2.** Ortiz' real complaint lies in the fact that his sentence was longer than those received by two other defendants. Presumably, he hoped Judge Belloni would have been more lenient with him. However, those two were convicted of conspiracy only, while Ortiz was convicted

of possession and conspiracy. The fourth defendant—Peter V. Lopez—was convicted on both counts and was sentenced by Judge Belloni to terms of prison and special probation that were significantly longer than those received by Ortiz.