UNITED STATES of America,
Plaintiff-Appellee,

v.

Miguel Lopez VALENCIA aka Enrique Carillo-Vasquez, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Flavio DUARTE, Defendant-Appellant.

Nos. 80–1422, 80–1434.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 1981.

Decided July 17, 1981.

Certiorari Denied Oct. 5, 1981.
See 102 S.Ct. 356.

---

* Honorable Robert W. Hemphill, Senior Judge, United States District Court for the District of South Carolina, sitting by designation.

Michael A. Nichols, Sunnyvale, Cal., for Valencia.

Benjamin Duarte, San Jose, Cal., for Duarte.

Gregory H. Ward, Asst. U. S. Atty., San Jose, Cal., for plaintiff-appellee.

Before WALLACE and POOLE, Circuit Judges, and GRANT,* District Judge.

WALLACE, Circuit Judge:

Valencia, Duarte, and Del Real were indicted for conspiracy to distribute heroin and cocaine in violation of 21 U.S.C. § 846 (Count One) and for distribution of heroin in violation of 21 U.S.C. § 841(a)(1) (Count Two). A superseding indictment additionally charged Valencia with unlawfully carrying a firearm in the commission of a felony in violation of 18 U.S.C. § 924(c)(2).

Del Real pled guilty to Count Two of the indictment, and the court took under submission the government's motion to dismiss Count One. The motion was subsequently

* Honorable Robert A. Grant, United States District Judge, Northern District of Indiana, sitting by designation.

granted. Valencia and Duarte were found guilty of Counts One and Two and Valencia was found guilty of the firearm count. Valencia and Duarte appeal and we affirm.

## I

Del Real told Barrera, a paid government informant with a history of narcotics and drug-related offenses, that Del Real had a friend who was selling heroin and cocaine. Barrera called Del Real the next day and arranged a meeting for the purpose of obtaining samples of the drugs. Barrera and special agent Loya of the Drug Enforcement Administration (DEA) met with Del Real and obtained samples of heroin and cocaine. The discussions with Del Real were tape recorded with the approval and assistance of the DEA. Del Real told Barrera to call his source, whom he identified as "Flavio," to let him know if the samples were acceptable. The telephone number given by Del Real was the number of Duarte's residence.

Barrera met again with Del Real, and they were joined by Duarte. Duarte told Barrera that an additional person would be involved in any future sale of narcotics. A deal was made that Duarte would sell a kilogram of heroin and a few ounces of cocaine to Barrera the following day.

The next day Del Real met with Barrera and Loya in a restaurant parking lot. Del Real told them that the owner of the drugs would sell only 20 ounces of heroin, and that the sale would take place in the parking lot of a department store. Barrera and Loya objected to the changed terms of the deal. Barrera then went with Del Real to discuss the matter with "Flavio." They went to a home where they met with Duarte who told Barrera that the deal would be for only 15 ounces of heroin.

While Duarte, Del Real, and Barrera were conversing, a brown station wagon arrived at the house. When it appeared, Duarte told Barrera that the "merchandise" had arrived. Duarte and Del Real then made several trips between Del Real's car and the station wagon. When they finished, Duarte told Barrera that only 15

ounces would be sold at first, that another 25 ounces would be delivered after the money was received for the first 15 ounces. A DEA agent who was watching identified the driver of the station wagon as Valencia.

Barrera and Del Real returned to the restaurant parking lot and explained to Loya what had occurred. Loya and Barrera followed Del Real to the department store parking lot, where they parked next to Valencia's brown station wagon. Valencia, who had been in the station wagon driver's seat, moved into the back seat while Del Real got behind the steering wheel. Loya told Barrera to go to the station wagon and to see if the heroin was there. As Barrera walked towards the station wagon, Duarte told him to get inside. When Barrera got into the station wagon, Valencia told him that the merchandise was in the glove compartment. Barrera took the bag out of the glove compartment and, after examining the contents, placed the bag on the floor of the car. He told Valencia that he would pay him, and then he got out of the car. Barrera told Loya that the heroin was on the floor of the station wagon. Loya told Barrera to give the pre-arranged arrest signal—the raising of the trunk.

After Valencia, Duarte, and Del Real had been placed under arrest, Loya walked over to the station wagon, observed the bag on the floor, and seized it. The bag contained approximately 15 ounces of heroin. A search of Valencia at the scene incident to his arrest revealed a loaded and cocked .45 caliber pistol concealed in the back of his pants and a small bindle of cocaine in a jacket pocket. The major issues raised on appeal are: (1) whether the district court erred in permitting the government to introduce evidence not included in its notice of intention to use evidence at trial; and (2) whether the district court erred in permitting Del Real to rely on his privilege against self-incrimination and to refuse to testify at trial.

## II

Valencia filed and duly noticed a motion pursuant to Rule 12(d) of the Federal Rules

of Criminal Procedure. Rule 12(d) provides in part:

(d) Notice by the Government of the Intention to Use Evidence. . . .

(2) *At the Request of the Defendant.* At the arraignment or as soon thereafter as is practicable the defendant may, in order to afford an opportunity to move to suppress evidence under subdivision (b)(3) of this rule, request notice of the government's intention to use (in its evidence in chief at trial) any evidence which the defendant may be entitled to discover under Rule 16 subject to any relevant limitations prescribed in Rule 16.

Fed.R.Crim.P. 12(d). The government responded with a list of certain evidence. That list did not include the cocaine bindle seized from Valencia's person at the time of his arrest. The item was not listed because at the time the list was filed, the government did not intend to introduce the evidence at trial. The government did stipulate during trial that it had made "an intentional, deliberate, and conscious decision" not to include the bindle of cocaine in its list of evidence. Over objection, the court permitted the government to offer the cocaine bindle into evidence, and allowed a supplemental motion to suppress it. Valencia now argues that the court should not have permitted the government to introduce the bindle into evidence because it violated the spirit and the letter of Rule 12(d), and Valencia's right to a fair trial and due process of law.

The Advisory Committee notes for Rule 12(d) indicate that the purpose of the rule is to make it possible for the defendant "to avoid the necessity of moving to suppress evidence which the government does not intend to use." Rule 12, Notes of Advisory Committee on Rules. The Advisory Committee notes go on to discuss why sanctions were not provided for in the rule.

No sanction is provided for the government's failure to comply with the court's order because the committee believes that attorneys for the government will in fact comply and that judges have ways of insuring compliance. An automatic exclusion of such evidence, particularly where the failure to give notice was not deliberate, seems to create too heavy a burden on the exclusionary rule of evidence, especially when defendant has opportunity for broad discovery under rule 16. Compare ABA Project on Standards for Criminal Justice, Standards Relating to Electronic Surveillance (Approved Draft, 1971) at p. 116:

A failure to comply with the duty of giving notice could lead to the suppression of evidence. Nevertheless, the standards make it explicit that the rule is intended to be a matter of procedure which need not under appropriate circumstances automatically dictate that evidence otherwise admissible be suppressed.

*Id.*

◼ The appropriate sanction for a failure to comply with a discovery rule should rest in the district judge's sound discretion. *See United States v. Baxter,* 492 F.2d 150, 174 (9th Cir. 1973), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974) (violation of a pretrial discovery order). Thus, our review is limited to the question of whether the district judge abused his discretion. *Id.*

◼ Although we have never addressed the question of sanctions for a Rule 12(d) violation, we find this case analogous to *United States v. Pheaster,* 544 F.2d 353 (9th Cir. 1976), *cert. denied,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977). In *Pheaster,* the defendant challenged the district court's refusal to suppress certain evidence found during a search of his residence because it was originally contemplated that nothing seized from the residence would be introduced at trial. Thus, no suppression motions were filed before trial. When the government later decided to introduce the evidence seized at the residence, the district court exercised its discretion to allow the introduction of the evidence, subject to any motions to suppress that the defendant might make. Such motions were made, and the district court conducted a suppression hearing in which it determined that the

evidence was admissible. The court found that:

> [w]hile the procedure was not ideal, it was, for the most part, dictated by the Government's vacillation concerning the evidence that it would present. The district court exercised its discretion to allow the evidence to be introduced. In doing so, it gave [the defendant] sufficient opportunity to present his objections and to preserve his position on appeal.

*Id.* at 382. Similarly in the instant case, Valencia was given a sufficient opportunity to present his objections. He filed a pre-trial motion to suppress the firearm taken during the search. That motion was denied after a suppression hearing. When the government announced its intention to introduce the cocaine bindle during trial, the court afforded Valencia the benefit of a second suppression hearing, at the conclusion of which the judge found the evidence admissible as having been seized incident to a lawful arrest. This hearing was conducted despite the fact that the cocaine bindle was seized during the same search that was the subject to the pre-trial suppression motion involving the gun. In addition, Valencia received pre-trial discovery of the laboratory report made in connection with the bindle. Thus, we fail to see how Valencia was prejudiced by the procedural irregularity. Without such a showing of prejudice, we conclude that the district judge did not abuse his discretion in admitting the cocaine bindle. *See United States v. Baxter, supra,* 492 F.2d at 174.

### III

■ Valencia and Duarte contend that the district court erred in permitting Del Real to refuse to testify on the ground that he might incriminate himself. During the course of the defense, Del Real was to be called as a witness. On the advice of counsel, Del Real invoked the privilege and refused to testify. He had pled guilty to distribution of heroin as charged in Count Two of the indictment, but had not been sentenced on that count. The government had moved to dismiss Count One of the indictment, which charged a conspiracy with Valencia and Duarte to distribute heroin and cocaine. The court, however, had not yet ruled on the government's motion.

Valencia and Duarte argue that because Del Real had pled guilty to one count and the government had moved to dismiss the other count, Del Real could no longer rely upon the privilege against self-incrimination because he was beyond exposure to criminal prosecution. The government argues that because Count One was still pending against him, Del Real could rely on his privilege against self-incrimination, particularly in light of the possibility of state prosecution and the lack of finality of his guilty plea to Count Two.

In *United States v. Roberts,* 503 F.2d 598 (9th Cir. 1974), *cert. denied,* 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975), we upheld the exercise of the privilege against self-incrimination when the witness asserting the privilege had pled guilty to one count of a several-count indictment. Similarly in *United States v. Trejo-Zambrano,* 582 F.2d 460 (9th Cir.), *cert. denied,* 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 682 (1978), we sustained the exercise of the Fifth Amendment privilege when the witness claiming the privilege had been convicted and was awaiting sentencing. The only fact that distinguishes this case from *Roberts* is that in the instant case the government had moved for dismissal of the remaining count before the trial of Valencia and Duarte. However, we do not find that distinction controlling. Del Real had a legitimate reason for asserting his privilege. Similar to the situation in *Trejo-Zambrano,* Del Real's testimony could have had an effect on his sentencing. In fact, there is no guarantee that the district judge would have accepted his guilty plea. More importantly, the district court could have denied the government's motion to dismiss Count One. These reasons, considered in conjunction with the possibility of state criminal liability, convince us that the district court did not err in permitting Del Real to rely on his privilege. *See United States v. Domenech,* 476 F.2d 1229, 1231 (2d Cir.), *cert.*

*denied,* 414 U.S. 840, 94 S.Ct. 95, 38 L.Ed.2d 77 (1973).

Valencia and Duarte have raised numerous other issues in this appeal. We have examined those issues and find them to be without merit.

AFFIRMED.