**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles R. GEE, Jr.,
Defendant-Appellant.**

**No. 80–1811.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 20, 1981.

Reassigned Aug. 31, 1982.

Decided Jan. 6, 1983.

David B. Bukey, Roberts & Shefelman, Seattle, Wash., for defendant-appellant.

Stephen Cooper, Asst. U.S. Atty., Fairbanks, Alaska, for plaintiff-appellee.

Before SKOPIL, FLETCHER, and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

Gee appeals from his conviction on one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. He contends on appeal that the Government violated Fed.R.Crim.P. 16(a) and the due process clause of the fifth amendment by not providing him with a transcript of a tape-recorded conversation in advance of trial. He also contends that he was prejudiced by his joint trial with two co-defendants who pled guilty after the close of all the evidence. Gee also objects to statements made by the prosecutor in closing arguments and to the use against him of co-conspirator statements which were made before the date that his participation in the conspiracy could be independently established.

## FACTS

Gee was tried with two alleged co-conspirators for his role in a conspiracy to distribute cocaine. The two co-conspirators were charged with several substantive offenses. Gee was charged only with conspiracy. The evidence against Gee consisted of two tape-recorded conversations involving Gee, his alleged co-conspirators, and an undercover agent, Officer Kallis, and the trial testimony of Officer Kallis.

The tapes of the recorded conversations were played for defense counsel in the U.S. Attorney's office on July 31, 1980. The Government later provided copies of the tapes to defense counsel. The tapes were of poor quality.[1] On August 11, 1980, Gee requested that the Government transcribe any of his tape-recorded statements and provide him with copies of the transcripts. On August 22 the Government responded that Gee had access to all tapes and that he had been provided with all transcripts then in existence.

On the day of trial the Government produced a transcript of a conversation that had been taped on April 25. Defense counsel objected to the jury's use of the transcript on the ground that the tape was of poor quality and the transcript had not been provided to the defense before trial,

---

1. Because the tapes were equally available to Gee and the government, the quality of the tapes is unimportant. Each side had the opportunity to make whatever use of the tapes it wished, including transcription. Gee has not claimed that the government's transcript is inaccurate or fills in "gaps" on the tapes. Whatever difficulty Gee had in understanding the tapes was a difficulty shared by the government.

even though defense counsel had made a timely request. The court deferred to a later date resolution of the questions as to when the Government transcribed the tape and whether it should have provided Gee and his counsel with a copy. The trial judge held a hearing on November 12, 1980, the day of Gee's sentencing, and concluded that the Government was not required to prepare or produce the transcript prior to trial. He denied Gee's motion for a new trial.

## I.

Rule 16 of the Federal Rules of Criminal Procedure requires the Government to produce, on request of the defendant, statements made by the defendant which are in the custody of the Government[2] and documents which are material to the preparation of a defense or which are intended for use by the Government as evidence in chief at trial.[3] Failure to produce such materials on request may require reversal if the defendant can show prejudice to his defense from their use at trial. *See United States v. Eddy,* 549 F.2d 108, 113 (9th Cir.1976).

Gee makes no claim that the Government withheld or refused to divulge the existence of evidentiary materials to be used against him at trial. Defense counsel was not only aware of the existence of the tape in question but had listened to it on several occa-

sions and had been provided with a copy for his own use. Gee claims that the Government's original was of poor quality and that the copy the Government provided him was even worse. Conceding that the Government's original was of poor quality, Gee does not allege and we find no reason to assume that Gee was prevented or disabled from producing a transcript for his own use in the same manner in which the Government was able to produce its own transcript. Gee does not question the accuracy of the Government's transcript nor does he challenge the trial judge's clear instruction to the jury that the tape was the only evidence and that the transcript was merely to aid their understanding of that tape.

There is some question as to whether the transcript existed at the time Gee made his discovery request on August 22. The Government asserted in response to Gee's discovery motion that all transcripts then in existence had been produced. At the hearing on November 12, however, Government counsel conceded that the evidence tag attached to the tape indicated the date on which the tape had been transcribed, but that the tape and the tag had been in custody of the court and unavailable to the Government. The trial court made no clear finding as to when the transcript had been prepared but concluded that it had been done some time after July 31.[4]

2. Fed.R.Crim.P. 16(a)(1)(A) provides in relevant part:

> Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known or by the exercise of due diligence may become known, to the attorney for the government; the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent; and recorded testimony of the defendant before a grand jury which relates to the offense charged.

3. Fed.R.Crim.P. 16(a)(1)(C) provides:

> Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of his defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

4. The judge made the following oral findings:
> I find that at all times the recording was in proper and legal custody. A copy was made which was apparently played on the—shortly prior to trial by counsel for the Defendant Gee and counsel for the Defendant Miles. At that time the equipment was furnished by defense counsel, obtained by defense counsel. Again, the recording was unsatisfactory. A request had been made of the transcripts that

■ Even if we were to conclude that the trial judge's finding is clearly erroneous, there is nothing in the record to support Gee's claim that the failure of the Government to provide him with a transcript of the tape in question prejudiced his rights at trial. Gee confuses the importance of the tape with the importance of the transcript. The real harm to Gee's case came from the tape and from Officer Kallis's explanation of what was said during the gaps in the tape. Gee did not object to the admission of either. The transcript added nothing which was not audible on the tape. Considering all of the circumstances, we cannot find that Gee was prejudiced by the trial court's ruling that the jury could read the transcript while listening to the tape.

Gee claims that without the transcript he and his trial counsel were hindered in their preparation for trial, since they were unable to understand either the original tape or their copy. The record does not show that the judge or the jury had problems understanding the tape. When the jury listened to the tape a second time during its final deliberations, it did not rely upon the transcript. The trial court expressly found that "the evidence which was the tape, although it is of poor quality .... was available to defense counsel." While it may be unfortunate that Gee and his trial counsel did not listen to their copy of the tape on better equipment and earlier than the night before trial, that omission does not justify the award of a new trial.[5]

*United States v. Walker,* 538 F.2d 266 (9th Cir.1976), and numerous cases from other circuits which Gee cites in his brief are inapposite. They involve the introduction of new evidence, not the production of old evidence in a different form. The trial court clearly instructed the jury that the tape, not the transcript, was the evidence. The trial court explained to the jury that "the transcript is merely for the purpose of aiding you to follow the evidence as it is given off the recording." After the tape was played, the copies of the transcript were retrieved from the jury.

■ Even if we found a violation of Rule 16 and some prejudice to defendant, we could find no reversible error in the trial court's decision to allow the jury to use the transcript. The trial court, when faced with a violation of Rule 16, may "order such [offending] party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such order as it deems just under the circumstances." Fed. R.Crim.P. 16(d)(2). As we have said many times, "[t]he appropriate sanction for a failure to comply with a discovery rule should rest in the district judge's sound discretion." *United States v. Valencia,* 656 F.2d 412, 415 (9th Cir.), *cert. denied,* 454 U.S. 877, 102 S.Ct. 356, 70 L.Ed.2d 186 (1981). *Accord, United States v. Baxter,* 492 F.2d 150, 174 (9th Cir.1973), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974). Here the record simply fails to show an abuse of discretion.

The trial court gave defense counsel ample opportunity to review the transcript before giving it to the jury. This led to lengthy discussion at the bench. The only substantial question concerned possible inaccuracies in the transcript. The trial court resolved this issue by removing the jury from the courtroom and listening to the tape with the transcript in hand. The trial court concluded that the transcript was entirely accurate, that it "picks up that which

were available by Mr. Rosie early in July, and at that time the Assistant United States Attorney, Mr. Cooper, advised the transcript had not been prepared. On July 31st at the meeting of defense counsel with the government's attorney when the tape was requested was again played; a request was again made for the transcript. Sometime, between that time and later, a transcript was probably prepared. It was conveyed or made available to the United States Attorney's office at some unknown date. Immediately prior to trial the transcript was made available to counsel for the defendant Gee, and the tape was played during the trial of the case. At the time the tape was played the transcript had been made available.

5. This is not a case where special equipment was necessary to make an inaudible tape audible.

can be heard over the tape." The trial court did, however, identify certain irrelevant and prejudicial portions of the transcript. These were then deleted and the corresponding portions of the tape were not played.

■ We have long recognized the value of using transcripts to assist the jury in understanding difficult tape recordings. *United States v. Tornabene,* 687 F.2d 312 (9th Cir.1982); *United States v. Turner,* 528 F.2d 143, 167–68 (9th Cir.), *cert. denied,* 423 U.S. 996, 96 S.Ct. 426, 45 L.Ed.2d 371 (1975) and 429 U.S. 837, 97 S.Ct. 105, 50 L.Ed.2d 103 (1976). The record reflects that the trial court took every precaution reasonably necessary to avoid improper use of the transcript. Given the accuracy of the transcript and its usefulness to members of the jury, complete exclusion would have been an excessive sanction of no significant benefit to the defendant. The trial court should not impose a sanction harsher than necessary to accomplish the goals of Rule 16. *See generally United States v. Sarcinelli,* 667 F.2d 5, 6–7 (5th Cir.1982).

The only additional relief to which Gee might have been entitled was a continuance, either immediately, before cross-examination of Officer Kallis, or before presenting his defense. But Gee did not request this relief. Nor did any of the defense counsel suggest to the court that additional defense preparation time would be helpful in any way. Under these circumstances there was no abuse of discretion in the manner in which the trial court dealt with the situation.

In reaching this conclusion we do not intend to make a broad statement on the law of evidence production under Rule 16. We recognize that even in only slightly different factual situations, wrongful behavior by the Government in failing to comply fully with Rule 16 might well compel reversal. Such a case, however, is not before us now.

## II.

■ Certain statements that Gee's alleged co-conspirators made prior to the time that independent evidence shows that Gee was a member of the conspiracy were admitted into evidence. Gee is correct in asserting that the statement of a co-conspirator is admissible under Fed.R.Evid. 801(d)(2)(E) only if that statement was made in furtherance of or during the course of a conspiracy. Statements of alleged co-conspirators made before the time it can be shown by independent evidence that Gee had joined the conspiracy are not admissible to show his participation. *See United States v. Williams,* 668 F.2d 1064, 1070 & n. 15 (9th Cir.1982); *United States v. Eubanks,* 591 F.2d 513, 518–21 (9th Cir.1979). Gee's problem is that evidence of his guilt is overwhelming. Any error in the admission of the statements complained of is harmless beyond a reasonable doubt.

## III.

■ Gee also asserts that the trial court erred in denying his motion to sever his trial from that of his co-defendants who pled guilty. Gee concedes, however, that the determination of whether severance is necessary to preserve the rights of the defendant is within the sound discretion of the trial judge. *United States v. Sears,* 663 F.2d 896, 900–01 (9th Cir.1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982); *United States v. Ortiz,* 603 F.2d 76, 78 (9th Cir.1979); *cert. denied,* 444 U.S. 1020, 100 S.Ct. 678, 62 L.Ed.2d 652 (1980).

■ The standard for demonstrating the necessity for severance is high, as we recently articulated in *United States v. Escalante,* 637 F.2d 1197, 1201 (9th Cir.), *cert. denied,* 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980):

> The party seeking reversal of a decision denying severance under Rule 14 has the burden of proving "clear," "manifest," or "undue" prejudice from the joint trial. . . . Such a party must show more than that a separate trial would have given him a better chance for acquittal. . . . He must also show violation of one of his substantive rights by reason of the joint trial: unavailability of full

cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant. . . . In other words, the prejudice must have been of such magnitude that the defendant was denied a fair trial. . . . Clearly, this is not an easy burden to meet.

Gee failed to demonstrate that any substantial rights were prejudiced at trial. The cases he cites are inapposite. This is not a case in which there was a vast disparity in the quantum of evidence presented against each of the co-defendants, *United States v. Mardian,* 546 F.2d 973 (D.C.Cir.1971), or where the offense with which the defendant was charged was only remotely related to the charges against his co-defendants, *United States v. Donaway,* 447 F.2d 940 (9th Cir.1971).

Gee also failed to renew his motion to sever at any point later in the trial.

Motions to sever must be timely made and properly maintained, or the right to severance will be deemed waived. *United States v. Figueroa-Paz,* 468 F.2d 1055 (9th Cir.1972). To preserve the point, the motion to sever must be renewed at the close of all evidence. 468 F.2d at 1057. . . . Diligent pursuit of a severance motion is the guiding principle. *United States v. Burnley,* 452 F.2d 1133 (9th Cir.1971); *Williamson v. United States,* 310 F.2d 192 (9th Cir.1962). Premature motions to sever not diligently pursued as the prejudicial evidence unfolds cannot serve as insurance against an adverse verdict.

*United States v. Kaplan,* 554 F.2d 958, 965–966 (9th Cir.), *cert. denied,* 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977).

Any possible lingering prejudicial effect on the jury was dispelled by the careful instruction given by the trial judge. "The prejudicial effect of evidence relating to the guilt of co-defendants is generally held to be neutralized by careful instruction by the trial judge." *Escalante,* 637 F.2d at 1201.

Affirmed.

FLETCHER, Circuit Judge, concurring:

At appellant's trial, the Government used a transcript of the tape made by Agent Kallis during his April 25, 1980 session with the defendant. Much of the tape was so unclear as to be unintelligible. The transcript represented important information for the defense concerning the Government's version of the conversation between Gee and Agent Kallis; its significance was independent of the significance of the tape itself. Under these circumstances, if the transcript was in existence at the time that the defendant made his discovery request, production was required, because the transcript was both a "relevant written or recorded statement[ ] made by the defendant, or cop[y] thereof," Fed.R.Crim.P. 16(a)(1)(A), and a "document[ ] . . . material to the preparation of [Gee's] defense," Fed.R.Crim.P. 16(a)(1)(C), "within the possession, custody or control of the government."

Counsel for the appellant listened to the tape in question together with Government prosecutors on July 31, 1980. At that time, the prosecutors made the representation that no transcript of the tape existed. Counsel then specifically requested production of a transcript of the tape, on August 7, 1980. In response to this discovery motion, the Government on August 22 stated that "[p]laintiff has provided all the transcripts there are. No further transcripts exist at this time." The trial court ruled that the transcript was not in existence when Gee made his final discovery request, and accordingly no Rule 16 violation had occurred.[1] The Government, however, conceded at the hearing on the issue that the tape was transcribed on or before the date indicated on an evidence tag attached to the

---

1. The trial court following a hearing made no explicit finding as to when the tape was transcribed, but concluded that the date was some-

time after July 31, 1980. *See* Maj. op. at 1167-1168 n. 4.

tape. The tape and tag are included in the record on appeal, and the tag plainly indicates that the transcript was prepared on "7–14–80," well before the conference and before Gee's discovery motion. For this reason, I conclude that the district court's finding that the transcript was not in existence was clearly erroneous, and that the Government committed a serious Rule 16 violation.

I concur, however, because the appellant has demonstrated no prejudice to his case flowing from the wrongful failure to produce the transcript.