

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-5-2008

# USA v. Smith

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2171

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Smith" (2008). *2008 Decisions.* Paper 1271.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1271

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2171
_____

UNITED STATES OF AMERICA

v.

DEREK W. SMITH,

Appellant.

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(No. 05-cr-0025-2)
District Judge:  Honorable John E. Jones, III

Submitted Under Third Circuit LAR 34.1(a)
March 13, 2008

Before: FUENTES, CHAGARES, and VAN ANTWERPEN, Circuit Judges
_____

(Filed May 5, 2008)


OPINION OF THE COURT

CHAGARES, Circuit Judge.

Derek Smith appeals his conviction for violating 21 U.S.C. § 843(b).  He contends

that the District Court erred by not suppressing evidence obtained from Smith's house

pursuant to a search warrant.  Smith asserts that the warrant did not establish probable

cause and that the Government failed to abide by the notice obligations imposed by Federal Rule of Criminal Procedure 12(b)(4)(B). Because the warrant contained sufficient evidence that the place to be searched contained the things to be seized, and because Smith suffered no prejudice from the Government's failure to comply with Rule 12(b)(4)(B), we will affirm the District Court's decision in all respects.

I.

In late 2004 the Williamsport (Pa.) Police Department learned from a confidential informant (CI) that Smith and his girlfriend Jessica Heddings had been selling cocaine and crack by the ounce from their shared home at 205 West Houston Avenue (205 West Houston) in Montgomery, Pennsylvania. (See Joint Appendix (JA) 79 (June 13, 2006 Supp. Hr'g at 7).) The Williamsport police teamed up with DEA Special Agent Joseph Begley to investigate Smith and Heddings. On January 5, 2005, Begley summarized the fruits of this investigation in an affidavit, submitted as part of a search warrant application for 205 West Houston. (See JA 51-55 (Begley Aff.).)

According to the affidavit, the CI told investigators that Smith and Heddings arranged drug transactions from 205 West Houston. (JA 52 (Id. ¶ 7).) The CI also reported that he personally had been buying cocaine and crack from Smith and Heddings for three to four months. (JA 53 (Id. ¶ 8).) The CI claimed to have purchased drugs from Smith at 205 West Houston on at least five occasions. (Id.) Each time, the CI was made to wait downstairs while Smith or Heddings retrieved the drugs from upstairs. (Id.)

2

The affidavit also described how investigators arranged for the CI to make two controlled purchases of cocaine from Smith and Heddings, and that each transaction began at 205 West Houston. At about 4:00 p.m. on December 30, 2004, officers saw Heddings arrive at 205 West Houston in a silver Dodge Durango. The CI then phoned Smith and asked to buy cocaine. (JA 53 (Id. ¶ 10).) Smith said he was at home, getting dressed, and would call the CI when he left the house. (Id.) At about 5:45 p.m., the police saw Heddings and Smith leave 205 West Houston in the silver Durango. (Id.) Ten minutes later, Smith called the CI from the truck and arranged a meeting. (Id.) When the parties arrived at the meeting place, Smith got out of the Durango, gave the CI an ounce of cocaine in exchange for marked money, got back in the Durango, and Heddings drove off with Smith as a passenger. (JA 54 (Id. ¶ 11).)

On January 3, 2005, the CI completed another drug transaction with marked money, this time with Heddings alone. (JA 54 (Id. ¶ 14).) The CI called Heddings at about 11:20 a.m., and she told him that she was heading into Williamsport later that day to do her laundry, and that she would call him when she got into town. (Id.) She did and the police observed her giving the CI an ounce of cocaine at the laundromat. (Id.)

On January 5, 2005, a Magistrate Judge signed a search warrant for 205 West Houston based largely on Agent Begley's affidavit. (JA 56-66 (Search Warrant).) The DEA and the Lycoming County Drug Task Force executed the search warrant the next day. They seized cocaine and marijuana (JA 88-89 (June 13, 2006 Sup. Hr'g at 16-17)),

3

material consistent with retail trafficking in cocaine (JA 89 (id. at 17)), records indicating that Smith and Heddings lived in the house (JA 91 (id. at 19)), and $2,225 in cash (JA 111 (id. at 39)).

Based on the results of the search, and the controlled purchases by the CI, a grand jury indicted Smith on January 13, 2005, charging him with three counts of cocaine distribution and one count of conspiracy to distribute cocaine.[1]  At his arraignment on February 11, 2005, Smith pled not guilty.  Smith thought that the warrant was unsupported by probable cause, and so intended to seek suppression of the search's fruits.

Accordingly, on February 16, 2005, he filed a motion pursuant to Federal Rule of Criminal Procedure 12(b)(4)(B) requesting that the Government notify him of the evidence it intended to use at trial that would be subject to possible suppression.  The Government never responded to the motion, although it did provide Smith with discovery, including police reports, the search warrant, and other investigative materials.

On April 25, 2006 – after waiting over 14 months, and still without a response from the Government on his Rule 12(b)(4)(B) motion – Smith filed a motion to suppress with the District Court.[2]  (JA 67-72.)  The District Court heard argument on the

---

[1] On June 21, 2006, a grand jury returned a superseding indictment which added counts five and six:  use of a communication facility in furtherance of a felony and renting a place for the purpose of cocaine distribution, respectively.  (JA 41-45 (Superseding Indictment).)

[2] The Government finally filed its Notice of Intent to Use Evidence Pursuant to Rule 12(b)(4) on May 31, 2006 – over a month after Smith filed his suppression motion.

4

suppression motion on June 13, 2006 (JA 73-119), and denied it on July 12, 2006 (JA 9-27).

With his suppression motion denied, Smith decided to change his plea, and on October 10, 2006, pled guilty to Count Five (use of a communication facility in furtherance of a felony), conditioned on his right to appeal from the denied suppression motion. A probation officer prepared a Presentence Report, which concluded that Smith had an offense level of 15 and a criminal history category of VI, corresponding to an advisory guidelines incarceration range of 41-51 months.

On March 27, 2007, the District Court sentenced Smith to 46 months in prison. This appeal followed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

Smith preserved his suppression argument (see Oct. 10, 2006 Conditional Plea Agmt.; JA 67-73 (Mot. to Supp.)), and so we review the District Court's factual determinations for clear error and exercise plenary review over the application of the law to those facts. See United States v. Williams, 417 F.3d 373, 376 (3d Cir. 2005). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Pelullo, 173 F.3d 131, 135 (3d Cir. 1999) (quoting

5

United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).  Accordingly, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety," we will not reverse it even if we would have weighed the evidence differently.  Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985).

III.

A.

Smith's challenge to the search warrant fails.  Probable cause exists if, under "the totality-of-the-circumstances . . . the issuing magistrate [makes the] practical, common-sense decision [that], given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983).  Direct evidence of a crime is not necessary in all cases:  "it is well established that direct evidence is not required for the issuance of a search warrant.  Instead, probable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might" keep the objects of the search.  United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993).

The affidavit Smith challenges meets this standard easily.  The two controlled buys described in Agent Begley's affidavit established probable cause to believe that Smith kept drugs at 205 West Houston in two ways.  First, Smith and/or Heddings initiated both sales from 205 West Houston.  In the December 30 transaction, Smith was at home when

6

Heddings returned to 205 West Houston from work. Smith and Heddings then drove directly from 205 West Houston to the meeting location and gave the CI an ounce of cocaine. From this sequence of events, it is reasonable to infer that the ounce of cocaine had been at 205 West Houston. Next, the January 3, 2005 purchase was consummated at a laundromat. Heddings carried two things with her to the cleaners that day: her domestic laundry, and an ounce of cocaine. It is a reasonable inference, of course, that one keeps laundry at one's home. Heddings was coming from the same place with the cocaine as she did with the laundry. This raised a "fair probability" that the drugs, too, came from 205 West Houston. Accordingly, both transactions had strong connections to 205 West Houston, and created probable cause to believe that drugs would be found there.

Second, both transactions conformed precisely with the CI's description of Smith's drug operation. Therefore, the Magistrate Judge could infer properly that one more piece of information from the CI, included in the warrant application, was also correct: that Smith stored his drugs at 205 West Houston. Because the controlled purchases both had connections to 205 West Houston and corroborated the CI's information, the District Court did not err in holding that probable cause supported the warrant application.

B.

Smith also seeks suppression of the evidence found during the January 6, 2005 search as a sanction for the Government's conceded violation of Federal Rule of Criminal

Procedure 12(b)(4)(B). Pursuant to Rule 12(b)(4)(B), "the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the Government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16." FED. R. CRIM. P. 12(b)(4)(B).[3]

The Rule has at least three salutary effects: First, it streamlines the suppression process because the defendant can avoid moving to suppress evidence the Government does not intend to use. See 1A CHARLES ALAN WRIGHT, FEDERAL PRACTICE & PROCEDURE § 197 (2007); see also, e.g., United States v. de la Cruz-Paulino, 61 F.3d 986, 993-94 (1st Cir. 1995); United States v. Anderson, 416 F. Supp. 2d 110, 112 (D.D.C. 2006). Second, and flowing from the first benefit, Rule 12(b)(4)(B) helps "preserve[] the integrity of a trial by not interrupting it with suppression motions." Cruz-Paulino, 61 F.3d at 994. Third, Rule 12(b)(4)(B) assists the Government by assuring it that its evidence-in-chief is admissible, and thus lessening the possibility of a mistrial or reversal on appeal through use of tainted evidence. See FED R. CRIM. P. 12(d) 1975 advisory comm. note.

Smith filed his motion for Rule 12(b)(4)(B) on February 17, 2005. (JA 31 (Docket Entry No. 52).) The Government never responded. On March 18, 2005, however, the Government provided Smith with 53 pages of Rule 16 discovery, including police reports and the search warrant. After waiting more than fourteen months for a response to his Rule 12(b)(4)(B) motion, Smith filed his motion to suppress on April 25, 2006. (JA 33

---

[3] The 2002 amendments replaced the former Rule 12(d)(2) with Rule 12(b)(4)(B).

(Docket Entry No. 95).) The District Court then proceeded with admirable dispatch, holding a hearing on the suppression motion and issuing a written opinion denying the motion within three months. (See JA 9-27 (July 12, 2006 Op.).)

The court declined to impose the "draconian sanction" of suppression for the Government's failure to comply with the Rules because, it held, Smith received adequate discovery in March 2005 and therefore did not suffer any prejudice. The District Court admonished the Government, however, noting that "we do not condone what in our experience has been a fairly prevalent practice of unresponsiveness on the part of particular United States Attorneys in this district relating to defendants['] requests under Rule 12." (JA 19 (July 12, 2006 Op. at 11).) The Government's behavior was "negligent," and unfortunately consistent with "piecemeal disclosure in other cases on our docket," which "violate[s] at least the spirit, if not the letter, of Rule 12."[4] (Id.)

On appeal, Smith concedes that a request for suppression based on the Rule 12(b)(4)(B) violation is "an unusual request for relief," but argues that it is appropriate because of the "studied practice" of the U.S. Attorney's Office "to totally ignore requests for information pursuant to Rule 12(b)(4)(B)." (Smith Br. at 10, 11.) Smith contends that the District Court's holding "stands the Rule 12 notice provision on its head," because it

[4] We note that the Federal Rules are a complex, interlocking mechanism. There is no superfluous Rule. And even if there were, government attorneys, as officers of the Court, may not disregard the Rules they find burdensome or duplicative. All parties in our system of justice must abide by the Rules as established by the Supreme Court of the United States.

renders Rule 12(b)(4)(B) superfluous: the wholesale provision of Rule 16 information does not fulfill the plain terms of Rule 12(b)(4)(B), which requires more than documents themselves – it requires the Government to affirmatively notify a defendant of what Rule 16 evidence the Government intends to rely upon in its case-in-chief. (Id. at 11.) Smith concludes that "[f]or every rule which is broken there has to be negative consequence for the rule breaker." (Id. at 14.)

The Government characterizes its behavior as an "alleged delay" in its response and an "alleged failure" to comply with Rule 12(b)(4)(B)'s obligations. (Gov't Br. at 20.) The Government also claims that it did not violate the "spirit" of Rule 12(b)(4)(B) because it provided Smith with Rule 16 discovery: "Since the Government complied with Rule 16 at the outset in this case . . . there simply [is] no basis for arguing that a material breach of these discovery rules has occurred." (Id. at 21-22). But, even assuming that it did violate Rule 12, the Government contends, Smith did not demonstrate prejudice flowing from the breach, and thus should not obtain suppression of the evidence seized from 205 West Houston.

Because Rule 12(b)(4)(B) is "a matter of procedure, rather than a rule designed to ensure fairness at trial," the Rule did not build in an automatic sanction mechanism. Cruz-Paulino, 61 F.3d at 994; see also FED. R. CIV. P. 12(d)(2) 1975 advisory comm. note ("No sanction is provided for the government's failure to comply with the court's order because the committee believes that attorneys for the government will in fact comply and

10

that judges have ways of insuring compliance.").  We have never considered the proper remedy for a violation of Rule 12(b)(4)(B).  Every Circuit that has addressed the issue, however, requires a defendant to demonstrate prejudice or bad faith before excluding evidence as a sanction.  See United States v. Barry, 133 F.3d 580, 582 (8th Cir. 1998) (upholding refusal to suppress where no bad faith or prejudice shown); Cruz-Paulino, 61 F.3d at 995 (while "mak[ing] clear that we do not condone governmental violations" of Rule 12(b)(4)(B), holding that "reversal is not mandated because [the defendant] suffered no prejudice" and did not demonstrate Governmental bad faith); United States v. Valencia, 656 F.2d 412, 414-16 (9th Cir. 1981) (where suppression hearing held, and no prejudice shown, suppression not warranted).

Although we agree with Smith that the simple provision of Rule 16 discovery does not satisfy the plain terms of Rule 12(b)(4)(B), we will follow our sister Circuits and require prejudice or bad faith before excluding evidence as a sanction for a Rule 12(b)(4)(B) violation.  Applying this standard here, it is clear that Smith suffered no prejudice and has not demonstrated bad faith by the Government.  Although the Government did not tell Smith what evidence it would seek to introduce at trial, in this case it was obvious:  Smith's suppression motion would stand or fall on the sufficiency of the warrant, and more specifically on whether Agent Begley's affidavit established probable cause to believe that cocaine was to be found at 205 West Houston.  The Government provided Smith with the warrant as part of its March 2005 document

11

production. This production also included police reports, which presumably listed the items seized from 205 West Houston during the January 6, 2005 execution of the search warrant. Smith does not contend that the March 2005 document production omitted any documents essential for his suppression motion. Because he made his suppression motion, and based it on full information, Smith suffered no prejudice. Moreover, while the U.S. Attorney's "practice of unresponsiveness" referenced by the District Court could conceivably rise to the level of bad faith, Smith does not provide any explicit evidence of such bad faith, and we are thus inclined to agree with the District Court's conclusion that the Government has simply been negligent in conducting its affairs.

## IV.

For the foregoing reasons, we will affirm the decision of the District Court in all respects.