UNITED STATES of America,
Plaintiff-Appellee,

v.

Ronald Gene SEARS,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Chandra WERNER, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Hubert STROZYK, Defendant-Appellant.

Nos. 80–1341, 80–1342 and 80–1397.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 3, 1981.

Decided Dec. 14, 1981.

Howard W. Gillingham, Los Angeles, Cal., for Sears.

Joseph F. Walsh, Los Angeles, Cal., for Werner.

Wallace D. Farrell, San Bernardino, Cal., for Strozyk.

Steven Kramer, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before ANDERSON and POOLE, Circuit Judges, and EAST,* District Judge.

EAST, District Judge:

Sears, Werner and Strozyk separately appeal from their respective judgments of conviction and sentence for bank robbery and kidnapping, 18 U.S.C. § 2113(a), (d) and (e), entered by the District Court on May 28, 1980. Count I charged all three defendants with the robbery of the Orangebelt Federal Savings and Loan Association in San Bernardino, California, and with a kidnapping arising out of the same incident. Count II contained similar charges against Sears and Werner arising out of the robbery of the Bank of America in Victorville, California. The separate appeals were consolidated for hearing.

Before trial, Strozyk moved for severance of offenses and defendants. The court severed Counts I and II, but ordered that Strozyk, Sears and Werner be tried together on Count I. The court denied Werner's motion to suppress evidence seized at the time of her arrest, but ordered suppression of all statements made by her after her arrest.

The jury found each defendant guilty as charged on Count I. We note jurisdiction under 28 U.S.C. § 1291 and affirm.

## THE FACTS

In the early morning hours of July 21, 1978, the Assistant Vice President of the Orangebelt Savings and Loan Association, John Savage, and his wife, Louise Savage, were awakened in their home by intruders. Blindfolded, handcuffed and repeatedly threatened, Mrs. Savage was left in the desert with one of the captors while the other two bandits drove with Mr. Savage to

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

the Savings and Loan. There the robbers stole a substantial amount of cash, and also broke into several safety deposit boxes, stealing jewelry and a coin collection. In the process, they displayed two machine guns, handguns and dynamite.

Mr. Savage described the robbers as two men in dark suits with long greasy hair, dark mahogany-colored faces, and Iranian or Middle Eastern accents. Mrs. Savage was able to peek out of a corner of her blindfold and see that the captor who remained with her in the desert had small feet and a gun. She described this person's voice as having a funny monotone pitch that sounded "kind of hollow."

About an hour after the robbery, Sears, Werner and Strozyk appeared at the home of Dolly and Jim Vorisek, who were friends of Sears. Mrs. Vorisek testified that the three took showers and then showed her numerous weapons and a suitcase full of money, jewelry, dynamite, handcuffs and dark-colored makeup. They proceeded to count the money, and Sears recounted the story of the robbery in detail without protest from either Strozyk or Werner. At Mrs. Vorisek's request, Mr. Vorisek returned home early from work, saw the loot and the weapons and heard the story of the robbery from Sears, again in the presence of Strozyk and Werner.

On January 25, 1980, Sears and Werner were arrested for the kidnapping-robbery involving the Bank of America in Victorville, California. At the time of their arrest, Sears and Werner possessed several weapons, some pipe bombs, handcuffs, binoculars, and a walkie-talkie radio. They were later indicted for both the bank robbery and the Savings and Loan robbery.

The Voriseks did not contact the police about what they had observed, but eventually told the FBI what they knew in early 1980, after Sears and Werner were arrested for the Victorville robbery. The appellants make several claims of error, both jointly and individually.

ISSUES

1. Did the District Court abuse its discretion by failing to dismiss a juror for bias and for incompetency due to a hearing problem?

2. Did the District Court abuse its discretion by denying Strozyk's motion for a separate trial on Count I?

3. Did the District Court erroneously deny Werner's motions to suppress evidence found on her person at the time of her arrest?

4. Was the evidence presented against Werner insufficient to support her conviction?

DISTRICT COURT'S REFUSAL TO REMOVE A JUROR

Sears, Werner and Strozyk contend that the District Court abused its discretion by not dismissing a juror who had a possible hearing problem during the trial and who made an unauthorized statement to a Government witness after his testimony.

As the jurors were filing out of the courtroom after the fourth day of trial, one of the jurors remarked "nice job" or "good job" to an FBI agent who had just testified. Counsel for the Government overheard the remark and immediately reported it to the court. The juror was questioned by the court about the remark during a recess on the next day. He admitted making the statement, and said that he meant to indicate that the agent had spoken clearly and in a loud voice, so that the juror could hear him. The juror also said, "He was the only witness I could hear clearly." Upon further questioning, the juror said that the reason he made the statement was that he "could hear him clear and concise. The other people I could hear. There were undertones I couldn't quite understand." After a sidebar conference at which the court rejected defense motions to disqualify the juror, the juror said: "May I make a comment? I have a hearing impairment and I have had difficulty understanding some of the questions and I have a comment that his voice was concisely clear and loud. I could hear it very clearly."

■ Sears contends that once the preliminary showing of juror misconduct had been

made, he had a corresponding right to an inquiry into relevant surrounding circumstances. The District Court has broad discretion to decide whether to conduct an evidentiary hearing into alleged juror misconduct, and to determine its extent and nature. *United States v. Berry*, 627 F.2d 193, 197 (9th Cir. 1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981); *United States v. Hendrix*, 549 F.2d 1225, 1227–28 (9th Cir.), *cert. denied*, 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977). In the present case, the District Court extended defense counsel an opportunity to question the juror, which defense counsel declined. Thus, no right of further inquiry was denied.

Each of the defendants contends that the District Court erred in refusing to remove the juror, claiming that the juror's communication to the FBI agent indicated his bias in favor of the Government, and that the juror had not heard all of the testimony due to a hearing impairment.

 Again, the trial court is invested with a wide discretion in determining the competency of jurors. That judgment will not be disturbed absent a showing of an abuse of that discretion. *United States v. Hendrix*, 549 F.2d at 1229. "The [trial] court must determine if the bias or prejudice amounted to a deprivation of Fifth Amendment (due process) or Sixth Amendment (impartial jury) guarantees. 'The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial.' [citations]." *Id.* Here, the juror explained that his commendation to the agent on his performance on the stand was meant only to indicate that he appreciated the witness's speaking clearly and in a loud voice. The District Court questioned the juror extensively enough to satisfy itself that the juror was not biased. Thus, we find no abuse of discretion by the District Court in refusing to replace the juror for bias.

 We further hold that the District Court did not err in refusing to dismiss the juror due to a hearing problem. On the day that the juror's comment was made, only one other witness testified. That witness was apparently soft-spoken, and was asked at various times to speak up by both the Assistant United States Attorney and Sears' attorney, as well as by another juror. While a hearing problem may have exacerbated the situation, the juror in question indicated to the trial judge that he was able to hear the witnesses, although he could not quite understand some of the "undertones" and had "difficulty" understanding some of the questions. Furthermore, the court had the opportunity to observe the juror closely before deciding that his hearing difficulty would not deny defendants' rights to due process or a fair trial. *See Lyda v. United States*, 321 F.2d 788, 790–91 (9th Cir. 1963).

We hold that the District Court acted well within its discretion in determining that the defendants received a fair trial by an impartial and competent jury, and thus did not err in its decision not to remove the juror in question for bias or for incompetency due to a hearing impairment.

## DISTRICT COURT'S REFUSAL TO SEVER THE TRIAL OF APPELLANT STROZYK

Strozyk moved both before and during trial for severance from the other defendants. He claims on appeal that the District Court's refusal to grant the severance prevented him from fully presenting his individual defense, limited his ability to cross-examine the witnesses properly, and prejudiced him by causing him to appear guilty by association with the other defendants.

 The often-articulated rule in this Circuit for evaluating severance claims is that, generally speaking, defendants jointly indicted should be jointly tried. Fed.R. Crim.P. 14 provides, however, that the trial judge may grant a severance when it appears that a defendant would suffer significant prejudice from a joint trial. The decision whether the prejudice resulting from joint trials outweighs the need to avoid multiple litigation and to conserve judicial resources is committed to the sound discretion of the District Court. We will reverse only when the refusal to sever amounts to

an abuse of that discretion. *United States v. Ortiz*, 603 F.2d 76, 78 (9th Cir. 1979), *cert. denied*, 444 U.S. 1020, 100 S.Ct. 678, 62 L.Ed.2d 652 (1980); *United States v. McDonald*, 576 F.2d 1350, 1355 (9th Cir.), *cert. denied sub nom., Stewart v. United States*, 439 U.S. 830, 99 S.Ct. 105, 58 L.Ed.2d 124 (1978).

The party seeking reversal of a decision denying severance under Rule 14 carries the difficult burden of demonstrating clear, manifest or undue prejudice resulting from a joint trial. *United States v. Lutz*, 621 F.2d 940, 945 (9th Cir. 1980); *United States v. Brady*, 579 F.2d 1121, 1127–28 (9th Cir. 1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979). It is not sufficient that a separate trial might offer a defendant a better chance of acquittal, or that the prosecution's case is stronger against a co-defendant.

> Rather, the ultimate question is whether under all of the circumstances, it is within the capacity of the jurors to follow the court's admonitory instructions and, correspondingly whether they can collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements, and conduct. [Citations.]

*United States v. Brady*, 579 F.2d at 1128. In other words, the prejudice must have been of such magnitude that the defendant was denied a fair trial. *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir.), *cert. denied*, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980).

Strozyk first claims that the refusal to sever prevented him from fully developing his individual defense with regard to his cross-examination of Vincent Santer. Santer testified that Strozyk had confided that he and some others had robbed a savings and loan, and had then recounted the story in detail. Strozyk's theory at trial was that Santer had received his information about the robbery, not from Strozyk, but from newspaper clippings and from two conversations with Sears while Sears was incarcerated after his arrest for the Bank of America robbery.

Strozyk claims that he could not properly raise the fact of Sears' incarceration in his cross-examination of Santer, with the result that Santer's conversations with Sears appeared to have occurred in a place "like a coffee shop." There is no indication that Strozyk attempted to question Santer about the location of his conversation with Sears, and there is no suggestion of why the location of the conversation was relevant. Before cross-examination of the witness, Strozyk's counsel agreed with the court that mentioning Sears' incarceration would not assist Strozyk and indicated that he did not intend to ask questions about it. In light of these facts, we find Strozyk's claim of prejudice without merit.

Strozyk next claims that he was prevented from clarifying the testimony of Dolly Vorisek concerning "another bank robbery." On cross-examination, Strozyk's counsel asked Mrs. Vorisek if she knew that there might be a reward when she spoke to the FBI. Mrs. Vorisek replied that it was "for the picture in the paper which was in reference to another bank robbery altogether." From previous sidebar conferences, all parties knew that the reward was for the robbery of the Bank of America (severed Count II). To avoid prejudicing Werner and Sears, the Government had instructed Vorisek not to mention that robbery.

Strozyk contends that he was prejudiced by the allusion to a second bank robbery because the jurors may have assumed that he was involved in it. The District Court, however, stated that it did "not feel that it had been communicated to the jury that there is another count with respect to some of the defendants in this case." On this record, we do not find that the court's judgment was in error.

The third claim of prejudice raised by Strozyk involves the testimony of Jim Vorisek. During his testimony, Mr. Vorisek turned and whispered confidentially to the court. This was the procedure that Strozyk's own counsel had requested when an answer might touch upon the Bank of America robbery. Strozyk asserts, however, that the witness's confidential com-

ment to the judge, coupled with long conferences at the sidebar regarding other evidentiary issues, indicated to the jury that the testimony was being curtailed, and caused the defendant to appear guilty in the mind of the jury. We find that this procedure for avoiding references to the separate robbery incident, necessary to avoid prejudice to Werner and Sears, and first initiated by Strozyk's counsel, did not unduly prejudice Strozyk's right to a fair trial.

Strozyk next claims that the redactions of the testimony of witnesses Santer and Dillman were improper. Santer's testimony was redacted to say that Strozyk had admitted that he (Strozyk) and "some others" had robbed a savings and loan association. Strozyk claims that this redaction was inadequate to solve the problem of the inadmissibility of a confession by one defendant against a co-defendant. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Any prejudice arising from this procedure would be to Sears and Werner, not to Strozyk. In any event we find the redaction of Santer's testimony to be proper.

Similarly, we find that Dillman's testimony did not manifestly prejudice Strozyk. Dillman first identified Strozyk as Sears. Any hesitation by Dillman in identifying Sears could easily have been cleared on cross-examination by Strozyk's counsel. He chose, however, not to cross-examine the witness. In addition, the trial court instructed the jury that Dillman's testimony was to be considered only in regard to defendant Sears.

Finally, Strozyk claims that he was prejudiced by the testimony relating to the dramatic arrest of Werner and Sears for the Bank of America robbery. The testimony, however, clearly indicated that he was not involved in that arrest.

We find that appellant Strozyk received a fair trial and was not unduly prejudiced by joinder in Count I. In light of the trial court's instructions as to the limited admissibility of some of the testimony, it seems well within the capacity of the jury to follow those instructions and to compartmentalize and weigh separately the independent evidence offered against each of the three defendants.

## ADMISSIBILITY OF THE EVIDENCE SEIZED FROM WERNER

Werner claims that the District Court erred in denying her motion to suppress the weapons, dynamite, handcuffs, and other objects seized from her person at the time of her arrest for the Bank of America robbery. She argues that the Bank of America arrest was illegal because the arrest warrant affidavit failed to establish probable cause to arrest her in that it relied heavily on information obtained from the record of an earlier allegedly unlawful arrest in Riverside, California, in May 1979. More specifically, the affidavit set forth that Werner was identified by various witnesses including some victims of the Bank of America robbery, the Ronnebecks, from photographs obtained from the Riverside Police Department. In her motion to suppress, Werner asserted that since the Riverside arrest was unlawful, the booking photographs taken by the police department were unlawfully obtained and thus could not be used by the FBI as a basis for probable cause to arrest her for the Bank of America Robbery. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). She also contends that the District Court erred in refusing to grant an evidentiary hearing on the legality of the Riverside arrest.

The facts surrounding the Riverside arrest were not disputed at the suppression hearing. Both sides agreed the facts to be that Werner and Sears were observed sitting in a vehicle with out-of-state license plates looking through binoculars at a bank across the street. After observing them for ten minutes, police stopped them as they pulled out of the parking lot and asked for the car's registration. Werner said that the registration was in the glove compartment, and also indicated that there was a gun there as well. The officers had Sears and Werner leave the car and detained them, and found both the gun in the glove compartment and also, at Sears' direction, an-

other gun in the back seat of the vehicle. Sears and Werner were then arrested and charged with carrying a concealed weapon. We find that the initial stop and subsequent search and arrest were proper.

As *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and subsequent cases have made clear, the limited intrusion of an investigatory stop is constitutionally permissible so long as the officers have an objectively reasonable suspicion that criminal activity is afoot. *Id.* at 30, 88 S.Ct. at 1884. In justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which, together with rational inferences from those facts, reasonably warrant that intrusion. *Id.* at 21, 88 S.Ct. at 1879. The Riverside officers observed individuals in a vehicle with out-of-state license plates looking at a bank through binoculars for about ten minutes. These facts are sufficient to justify the stop.

After making a permissible investigatory stop, it is well-established that the officers could then make a warrantless search of the automobile if exigent circumstances existed to prevent them from obtaining a search warrant: "[A] search warrant [is] unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible." *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925). In the instant case, appellant Werner advised the police officers of the gun's location in the glove compartment. That fact, together with the circumstances of the initial stop, is sufficient to cause the officer reasonably to believe that the automobile contained an illegally concealed weapon. Once having found the concealed weapons, the officer clearly had probable cause to arrest. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *United States v. Portillo-Reyes*,

529 F.2d 844, 848 (9th Cir. 1975), *cert. denied*, 429 U.S. 899, 97 S.Ct. 267, 50 L.Ed.2d 185 (1976).

The District Court, here, however, denied Werner's motion to suppress on the grounds that it was not accompanied by affidavits within the meaning of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). That case held that where a defendant makes a substantial preliminary showing through affidavits that a false statement was knowingly, intentionally or recklessly included in the warrant affidavit, and if the statement is necessary to the finding of probable cause, a hearing must be held on the issue at the defendant's request. Werner does not claim here that the information concerning her Riverside arrest is false, but only that it was illegally obtained and that its inclusion in the arrest warrant affidavit for the Bank of America robbery was, therefore, impermissible. Thus, the narrow holding of *Franks* is inapposite. Regardless of the District Court's basis for denying the motion to suppress, however, Werner was not prejudiced by the denial of an evidentiary hearing on the legality of the Riverside arrest. She does not raise any dispute as to the facts surrounding the Riverside arrest. On those facts, we find that that arrest was proper, and that information and photographs obtained during booking procedures following the arrest were lawfully obtained.

Having determined that all of the information relied on in the arrest warrant affidavit could lawfully serve to establish probable cause to arrest, we further hold that the arrest warrant affidavit was sufficient to establish probable cause to arrest Werner for the Bank of America robbery. The familiar standard for evaluating probable cause for an arrest is whether the facts known "were sufficient to warrant a prudent man in believing that the [defendant] had committed . . . an offense." *Beck v. Ohio*, 379 U.S. at 91, 85 S.Ct. at 225; *United States v. Portillo-Reyes*, 529 F.2d at 848. Werner contends that although the evidence set forth in the affidavit may have established probable cause to arrest Sears,

it showed only that she was an associate of his, and not an accomplice to the Bank of America robbery. The evidence in the affidavit, however, indicated that she was with Sears both before and after the robbery, that she fit the description of one of the robbers provided by several witnesses, that both she and the smaller robber had abnormal eyes and a hearing problem. The evidence is more than ample to warrant a prudent person in believing that Werner participated in the robbery. Since the affidavit supporting the arrest warrant was sufficient on its face, the District Court did not err in ruling that evidence seized from Werner pursuant to that arrest was admissible at trial.

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT WERNER'S CONVICTION

Werner further contends that the evidence at trial was insufficient to convict her because it consisted only of circumstantial evidence showing that she was in the company of Sears and Strozyk on the day of the savings and loan robbery, that all three were in possession of guns, dynamite, and money, and that she was eventually arrested along with Sears in possession of guns, dynamite and handcuffs. Werner claims that the other evidence against her, the testimony of the Voriseks concerning Sears' detailed account of the robbery, was erroneously admitted over her hearsay objection.

### A. ADMISSIBILITY OF SEARS' STATEMENTS AGAINST WERNER

#### 1. *An Adoptive Admission*

█ The District Court admitted Sears' statements to the Voriseks concerning the robbery as evidence against Werner on a theory of adoptive admission. Fed.R.Evid. 801(d)(2)(B). To constitute an admission by silence, the statement must be made in the defendant's presence and hearing, and the defendant must actually understand what was said and have an opportunity to deny it. *United States v. Moore,* 522 F.2d 1068, 1076 (9th Cir. 1975), *cert. denied,* 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976).

█ Before admitting a statement as an admission by acquiescence, the District Court must determine, as a preliminary question, whether under the circumstances an innocent defendant would normally be induced to respond. *Id.* at 1075. The District Court should not submit the evidence of an admission by silence to the jury unless it first finds that sufficient foundational facts have been introduced for the jury reasonably to conclude that the defendant did actually hear, understand and accede to the statement. *Id.* at 1076. The court's judgment, however, is only a preliminary or threshold determination. The jury is primarily responsible for deciding whether, in light of all the surrounding facts and circumstances, the defendant actually heard, understood and acquiesced in the statement. *Id. See also United States v. Giese,* 597 F.2d 1170, 1196 (9th Cir. 1979), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979).

█ Werner claims that the foundational requirements were not met because the evidence indicated that her hearing problem precluded her from hearing and understanding Sears' statements. In the instant case, the District Court was presented with conflicting evidence as to whether Werner actually heard and understood Sears' recounting of the Savings and Loan robbery at the Vorisek residence. On the one hand, Dolly Vorisek testified that Sears said to her: "Wait 'til you see what we did today," and then turned to Werner and Strozyk and asked: "Should we show her?" Werner and Strozyk both shrugged their shoulders and nodded their heads. In the garage, while Sears was displaying the loot and weapons and recounting the story of the robbery, Werner sat within two or three feet of him with a gun in her lap and helped count the stolen money. Furthermore, the District Court noted that it observed at trial that Werner's counsel seemed quite able to communicate with her when she was not wearing her hearing aids.

Dolly Vorisek also testified, however, that Werner never spoke to Mrs. Vorisek at her home on July 21, 1978. Mrs. Vorisek

further testified that on that afternoon Sears was having extreme difficulty communicating with Werner, who was not wearing her hearing aids. After trying several times to make Werner understand him, Sears allegedly threw up his hands and gave up.

Although the question is a close one, we find that the District Court did not err in determining as a preliminary matter that this evidence was sufficient to warrant a jury's reasonable conclusion that Werner actually understood that Sears was specifically implicating her in the robbery. In light of the evidence presented, the District Court properly sent to the jury the question of whether Werner actually heard, understood and acquiesced in Sears' description of the robbery.

### 2. *Admissible Statement of a Co-conspirator*

■ In addition, we conclude that Sears' statements were admissible against appellant Werner as statements of a co-conspirator made during the course of and in furtherance of a conspiracy. Fed.R.Evid. 801(d)(2)(E). Before admitting a statement of a co-conspirator against a defendant, the court must have independent evidence of the existence of the conspiracy and of the defendant's connection to it, *United States v. Testa,* 548 F.2d 847, 853 (9th Cir. 1977); *United States v. Dunn,* 564 F.2d 348, 356–57 (9th Cir. 1977), and must conclude that the statement was made both during and in furtherance of the conspiracy. *United States v. Eubanks,* 591 F.2d 513, 519–20 (9th Cir. 1979).

■ The course of events at the Vorisek residence certainly occurred during the course of the conspiracy to rob the Savings and Loan. *See United States v. Caplan,* 633 F.2d 534 (9th Cir. 1980). The defendants were in the process of escaping after the robbery. They had stopped at the Voriseks to·shower, change clothes, count the loot and dispose of their disguises. Sears had planned in advance to use the Vorisek home as a stopping place after the robbery, and had checked with Mrs. Vorisek who indicated that she did not expect to be home on the day for which the robbery was planned.

Werner contends, however, that Sears' statements were not made in furtherance of the conspiracy to rob the bank. We disa-- gree. Sears' statement to Strozyk to get rid of a garbage bag containing disguises can easily be construed as a statement in furtherance of the conspiracy. Likewise, Sears' other statements were not only an admission of the crime but also necessary to insure a successful escape.

Having unexpectedly found Mrs. Vorisek at home due to her daughter's illness, the defendants were then obliged to explain the reason for their presence and activities to Mrs. Vorisek, to induce her to allow them to use her home to further their escape, and to dissuade her from informing the police about the robbery. The record reveals that both Mr. and Mrs. Vorisek acknowledged at trial that they were intimidated by Werner's holding a gun in her lap and glaring at them while Sears related the story of the robbery, and that their fear of being implicated because of their knowledge of the events surrounding the robbery and the aid they extended to the defendants stopped them from going to the police. Thus, Sears' statements did serve to further the objectives of the conspiracy—to rob the Savings and Loan and to escape successfully.

### B. SUFFICIENCY OF THE EVIDENCE FOR WERNER'S CONVICTION

In evaluating the sufficiency of the evidence to support a conviction, the evidence must be viewed in the light most favorable to the Government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). In determining the sufficiency of circumstantial evidence, the question "is not whether the evidence excludes every hypothesis except that of guilt but rather whether the trier of fact could reasonably arrive at its conclusion." *United States v. Eaglin,* 571 F.2d 1069, 1076 (9th Cir. 1977), *cert. denied,* 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497 (1978), *quoting United States v. Heck,* 499 F.2d 778, 790 (9th Cir.), *cert. denied,* 419 U.S. 1088, 95 S.Ct. 677, 42 L.Ed.2d 680 (1974).

Our review of the record indicates that the evidence against Werner, as recounted above, including the properly admitted statements of Sears, constitutes a sufficient basis upon which the jury could reasonably base a verdict of guilty. Thus, we find sufficient evidence on the record to support Werner's conviction.

## CONCLUSION

The judgments of conviction and sentence of Sears, Werner, and Strozyk entered by the District Court on May 28, 1980 are affirmed.

AFFIRMED.