Larry N. BROWN, Appellant,

v.

UNITED STATES, Appellee.

No. 81–1498.

District of Columbia Court of Appeals.

Argued May 5, 1983.

Decided July 18, 1983.

As Modified Sept. 28, 1983.

Noel F. Danto, Silver Spring, Md., appointed by this court, for appellant.

Ava J. Abramowitz, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, and Michael W. Farrell, John R. Fisher, and Steven D. Gordon, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before FERREN and BELSON, Associate Judges, and KELLY, Associate Judge, Retired.

FERREN, Associate Judge:

Appellant challenges his convictions for felony murder, D.C.Code § 22–2401 (1981), robbery, id. § 22–2901, and first-degree burglary, id. § 22–1801(a). He assigns error to the introduction of certain demonstrative evidence and of allegedly hearsay testimony. He also contends that the trial court's instructions to the jury were deficient. Finally, he asserts that the trial court erroneously denied his motion for judgment of acquittal because of insufficient evidence for the convictions. We conclude that the challenged evidence was relevant and admissible, that the trial court's instructions were proper and complete, and that the government introduced sufficient evidence from which a reasonable jury could conclude beyond a reasonable doubt that appellant was guilty of the charged offenses. Because the convictions for robbery and felony murder merge, however, we affirm subject to remand with instructions to vacate conviction for robbery and to resentence appellant accordingly.

## I.

This case concerns the murder and robbery of James Matthews, well known as a neighborhood bootlegger, in his apartment on E Street, N.E. The government built a circumstantial but compelling case against appellant upon two lines of evidence: one demonstrated the crime itself; the other, comprised entirely of testimony from witness Wayne Hall, showed appellant's actions around the time of the crime, and ostensibly connected appellant to it.

Matthews' mother, Ida Curtis, testified that she last saw her son on Sunday, October 7, 1979. At that time, Matthews had $200–$300 in cash in his left trouser pocket, where he also always carried a small revolver. Curtis talked to Matthews by telephone the next evening, October 8, which she remembered as a rainy night. Margaret Dewault, Matthews' girlfriend, testified that she saw Matthews at her apartment that same rainy night. Matthews left to return to his own apartment around nine p.m.

On the morning of Tuesday, October 9, Curtis went to her son's apartment on E Street, N.E. She and a neighbor, Joyce Cotman, who also testified, found Matthews' door unlocked and entered his apartment. Matthews' body, bound and gagged, lay on the living room sofa. Curtis unbound Matthews' hands and noticed that his left trouser pocket was turned out and that he no longer had the currency that she had seen him with Sunday evening. She also observed that Matthews' new radio was missing.

Dewault testified that she had been at Matthews' apartment in the morning on Monday, October 8. At that time, Matthews had "a lot of money in his possession" as well as a great deal of liquor in his cabinet and in boxes scattered throughout his apartment.[1] Also in Matthews' apartment were "dixie cups" and a "macaroni or

---

1. Dewault testified that Matthews was a bootlegger. Because of the nature of his trade, Matthews kept security at a maximum; he had several locks on his apartment door and let in only persons he recognized.

coleslaw" container filled with change, and a portable radio. Dewault identified a photograph (Government Exhibit 11) as "looking like" the radio.

Police officers testified that neither the liquor boxes, the currency, the containers of change, the revolver, nor the radio was found in Matthews' apartment during a thorough search of the crime scene. The medical examiner stated his opinion that Matthews' death resulted from asphyxia by strangulation. The injuries were consistent with a sudden and unexpected attack.

To tie appellant to the crimes, the government presented Wayne Hall. On October 16, 1979, Hall had approached two police officers with whom he was acquainted and inquired whether the police were looking for Alvin Poston and appellant in connection with a murder. Hall testified that he received $75 from the police in return for this information which included where Poston and appellant could be located. Hall related the following story on the witness stand:

In the autumn of 1979, Hall spent a great deal of time at the apartment of Carl Marks (who died before trial). Hall often would socialize at Marks' apartment with three other men—Alvin Poston, Whitfield Graves, and appellant. One evening, a few days before Matthews' murder, Hall sat around with Poston, Graves, and appellant at Marks' apartment. Poston announced that he wanted to get some wine on credit from the bootlegger and then left. (Hall knew that the bootlegger lived on E Street, N.E.). Some fifteen minutes later, an angry Poston reappeared, lamenting that the bootlegger had refused to extend credit, and stated: "We should rob the old [bootlegger]." Hall testified that Graves and appellant responded, "Why not?"

Hall next saw appellant, Graves, and Poston in the very early morning of October 9, 1979 at Marks' apartment. Hall remembered it was raining hard. The three entered the apartment. Poston carried a radio and a "coleslaw or potato salad" plastic container with change in it. Graves carried

a shopping bag, the contents of which clanged like bottles. Hall testified that Poston's radio looked like the one depicted in Government Exhibit 11. Graves pulled a one inch stack of bills from his pocket, giving Marks $75 with which to buy drugs. After Marks left, Graves split the remaining currency among Poston, appellant, and himself. The three men and Hall then sat around talking. Hall recounted the conversation: Graves complimented appellant "for a job well done," saying that when Graves knocked on the door, appellant had "rushed the man on time." In response, appellant "laughed."

For the rest of the night and into the morning, the men took drugs and drank from bottles Graves extracted from the bag he had carried into the apartment. The next morning, the men were watching television when a news flash announced that a man had been found bound and dead in his E Street apartment. Poston stated in a "scared" tone of voice, "I ain't know you all had killed the man." Appellant told Poston to "shut up," whereupon Poston left Marks' apartment and Graves and appellant retired to the kitchen, where the two exchanged whispers.

Hall later met with the police officers to relay his information. Poston, Graves, and appellant were subsequently indicted and tried separately for murder, robbery, and burglary. All three were convicted on each count.

II.

■ Appellant, while failing to object at trial, now contends that the trial court erred in permitting the government to introduce Exhibit 11, a warranty card for a "deluxe multiband portable radio," complete with a photograph of the item and an accompanying list of its salient features. Despite appellant's efforts to characterize the introduction of this exhibit as plain error, we are convinced no error occurred. The government laid a proper foundation for introduction of the photograph, and it was relevant as demonstrative evidence

that the radio which codefendant Poston carried into Marks' apartment when he returned with appellant and Graves was similar to (and, inferentially, the same as) the radio that Dewault testified was missing from Matthews' apartment after the robbery.

■ The determination whether to admit photographs as demonstrative evidence is within the trial court's sound discretion. *Simms v. Dixon,* 291 A.2d 184, 186 (D.C. App.1972). The trial court may permit introduction of such evidence if it is "sufficiently explanatory or illustrative of relevant testimony in the case to be of potential help to the trier of fact." McCORMICK ON EVIDENCE § 212, at 528 (2d ed. 1972). "Under this theory, a photograph is viewed merely as a graphic portrayal of oral testimony, and becomes admissible only when a witness has testified that it is a correct and accurate representation of relevant facts personally observed by the witness." *Id.* § 214, at 530 (footnote omitted); *accord Simms, supra,* 291 A.2d at 186.

That test is met here. Contrary to appellant's assertion, Government Exhibit 11 reveals a clear photograph of a distinct type of radio. Moreover, the fact that appellant's codefendant, Poston, was seen in appellant's presence, shortly after Matthews' radio was stolen, carrying the same type of radio is relevant to the central issue of whether appellant committed the offenses. Hall testified that he personally observed Poston carrying a portable radio approximately a foot high and just over a foot long. Dewault testified that Matthews owned a radio of similar proportions that was missing after the murder. Hall and Dewault each scrutinized Exhibit 11 and testified that it "looked like" the radio they had observed. Identification of Exhibit 11 by both Dewault and Hall as a correct representation of the item each was describing tended to make it more likely, albeit circumstantially, that they were discussing the same radio. Exhibit 11, therefore, was admissible as an explanatory illustration of Dewault's and Hall's relevant testimony concerning the radio each had observed.

### III.

■ Wayne Hall testified about three colloquys between appellant and his codefendants. Appellant argues that Hall's testimony was inadmissible hearsay. We conclude otherwise and hold that the exchanges between appellant and his codefendants, as related by Hall, were admissible against appellant under the adoptive admissions doctrine.[2]

■ Ordinarily, a statement, other than one made by the declarant while testifying, is not admissible in evidence to prove the truth of the matter asserted. There is an exception, however, for admission of hearsay evidence of a party's prior statements when they are inconsistent with his or her position in the litigation. *Powell v. United States,* 414 A.2d 530, 533 (D.C.App.1980) (per curiam). "Testimony that an accused adopted statements of another person as his own admissions may be admitted in evidence as an exception to the hearsay rule 'if it clearly appears that the accused understood and unambiguously assented to those statements.'" *Harrison v. United States,* 281 A.2d 222, 224 (D.C.App.1971) (quoting *Naples v. United States,* 120 U.S.App.D.C. 123, 126, 344 F.2d 508, 511 (1964)); *accord United States v. Sears,* 663 F.2d 896, 904 (9th Cir.1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982) ("[t]o constitute an admission by silence, the statement must be made in the defendant's presence and hearing, and the defendant must actually understand what was said and have an opportunity to deny it").

■ As a preliminary matter, the trial judge must determine whether sufficient foundational facts have been introduced for the jury reasonably to conclude that the defendant's conduct manifested his or her assent to the other person's statement.

---

**2.** This doctrine is variously referred to in the case law as "adoptive admissions," "implied admissions," "admissions by acquiescence," and "admissions by conduct."

*Harrison, supra,* 281 A.2d at 224 (citing *Naples, supra,* 120 U.S.App.D.C. at 127, 344 F.2d at 512); *Sears, supra,* 663 F.2d at 904. If the evidence is sufficient to warrant a reasonable conclusion that the defendant did so acquiesce, the trial judge should permit the jury to decide "whether, in light of all the surrounding facts and circumstances, the defendant actually heard, understood and acquiesced in the statement." *Sears, supra,* 663 F.2d at 904.

▪ Initially, there must be evidence that, when the other person spoke, the defendant was present and heard the statement. Whether the defendant acquiesced in the statement can then be shown by the context of the conversation and the surrounding circumstances. *See United States v. Handy,* 668 F.2d 407, 408 (8th Cir.1982). A defendant's failure to object to or deny a codefendant's statements at the time they were made is especially probative of the defendant's acquiescence if they are made in the presence of a third party who was not an accomplice in the crime. *United States v. Schroeder,* 433 F.2d 846, 850 (8th Cir.1970), *cert. denied,* 401 U.S. 943, 91 S.Ct. 951, 28 L.Ed.2d 224 (1971).

We note that witness Hall stated that appellant was present at the time of each conversation. He also testified that appellant participated in the conversations, leaving no doubt that appellant understood the colloquys and was not unable to respond. At trial, appellant failed to object to the evidence of the conversations on the ground of insufficient foundation; instead, he objected to the alleged hearsay nature of the evidence. Appellant did not attempt to rebut the foundation laid by the government as to his presence at the time of the conversations or as to his ability to hear or to understand the statements. *See United States v. Fortes,* 619 F.2d 108, 116 (1st Cir.1980). Thus, we only have to evaluate whether a jury reasonably could conclude, in light of the surrounding circumstances, that appellant manifested his assent to the statements of his codefendants.

As elaborated below, we conclude that there was a sufficient foundation to show appellant was present and heard his codefendants' statements; further, a reasonable jury could conclude from the context of the conversations that appellant unambiguously assented to those statements. *Compare Naples, supra,* 120 U.S.App.D.C. at 128, 344 F.2d at 513 ("under no reasonable view of the record can it be said that appellant unambiguously and comprehendingly assented to the statements") *with Harrison, supra,* 281 A.2d at 224 ("we cannot say that it was clearly erroneous for the trial court to find that appellant's statement was an understanding and unambiguous adoption of the statements").[3]

### A.

The first challenged admission occurred, according to Hall, a "couple of days" before the charged offenses. Alvin Poston, apparently angry upon being unable to secure liquor on credit from Matthews, returned to Carl Marks' apartment. Hall testified that Poston "said to Whitfield Graves and Larry Brown, 'The old mother-fucker wouldn't give me no wine on credit .... We should rob the old mother-fucker.'" When the prosecutor asked whether the codefendants responded to Poston, Hall stated: "Whitfield Graves, he said, he made the statement, 'Why not rob him?' Larry Brown said, 'Why not?'"

We have no difficulty in concluding that appellant Brown's statement ("Why not?") in the context of the conversation (an apparently angry Poston discussing plans to rob the bootlegger who would not extend credit for his merchandise) reasonably can be construed to evidence appellant's own contemplation of participation. Thus, the statement was properly introduced as an admission.[4]

---

3. Unlike the situation here, where the challenged admissions were made to an acquaintance, in *Naples* and *Harrison* the admissions were given to law enforcement authorities.

4. Poston's statements also were admissible

### B.

Next, Hall testified that after the trio of codefendants returned to Marks' apartment the rainy night before Matthews' body was found, he and they were "sitting around talking and—and Woody [Graves] complimented Larry Brown for a job well done .... He told him that he was on time. When he knocked on the door he rushed the man on time." The prosecutor inquired as to appellant Brown's response "when Mr. Graves said this to him." Hall answered, "He laughed."

Hall's testimony provides a sufficient foundation to conclude that appellant heard and understood Graves' remarks. Moreover, appellant's failure to deny Graves' expressed admiration, especially in the presence of an uninvolved third person (Hall), is evidence that the charge was truthfully made and impliedly admitted by appellant. *McUin v. United States,* 17 App.D.C. 323, 331–32 (1900); *see Sears, supra,* 663 F.2d at 904–05; *Fortes, supra,* 619 F.2d at 116; *Schroeder, supra,* 433 F.2d at 850.

### C.

Appellant's final allegation of inadmissible hearsay also fails. The morning after the codefendants returned to Marks' apartment (neither Hall nor the codefendants having left the apartment), the group was watching television when a news flash came on stating, according to Hall, "that a man was found tied up, a man was found dead, tied up in his apartment . . . on E Street . . . . Alvin Poston said, 'I ain't know you all had killed the man.' . . . like he was scared . . . . Mr. Brown told him to shut up." Poston was at that point accusing appellant Brown of a heinous crime. The context of his charge was clear from the television report.[5]

Under the circumstances of the case, it is to be presumed that, according to ordinary human experience, he would naturally have repudiated the charge, if it were not true. The principle is, that where a statement is made either to a man, or within his hearing, that he was concerned in the commission of a crime, to which he makes no reply, the natural inference is that the imputation is well founded, or he would have repelled it.

*McUin, supra,* 17 App.D.C. at 332 (citations omitted).[6]

### IV.

■■■ We need not address at length appellant's assertion that the trial court erred in denying his motion for judgment of acquittal. Appellant was convicted of felony murder, burglary, and robbery.[7] The

---

merely to explain appellant's own admission. The federal court of appeals, in addressing the admissibility of both sides of a clandestinely taped telephone conversation, has stated, "[The other's] statements would accompany those of [the defendant] not as evidence of the truth of the former's contents but, to the extent to which [the defendant's] responses constituted incriminating admissions of his own, to make those responses intelligible to the jury and recognizable as admissions." *United States v. Lemonakis,* 158 U.S.App.D.C. 162, 169, 485 F.2d 941, 948 (1973), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974).

5. Appellant did not dispute the contents of the news flash.

6. On appeal, appellant contends that it was plain error for the trial court not to caution the jury sua sponte "against trusting overmuch to the accuracy of" Hall's testimony about the conversations "since there are 'great possibilities of error in trusting to recollection-testimony of oral utterances, supposed to have been

heard' " (quoting *Naples, supra,* 120 U.S.App. D.C. at 127, 344 F.2d at 512 (dicta) (citation omitted)). In light of the trial court's other careful instructions concerning credibility and appellant's failure to request the specific instruction, the lack of such instruction "was not such plain error 'affecting substantial rights' as leads us to reverse." *Obery v. United States,* 95 App.D.C. 28, 30, 217 F.2d 860, 862 (1954) (citations omitted), *cert. denied,* 349 U.S. 923, 75 S.Ct. 665, 99 L.Ed. 1255 (1955).

7. The trial court sentenced appellant to separate terms of imprisonment for each offense: twenty years to life for felony murder and five to fifteen years for robbery, to be served concurrently; and seven to thirty years for burglary, to be served consecutively to the sentences for felony murder and robbery and to any other sentence appellant was then serving.

For purposes of punishment, felony murder and the underlying felony merge. *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *see Doepel v. United States,* 434 A.2d 449, 459 (D.C.App.), *cert.*

evidence, viewed in the light most favorable to the government, *McEachin v. United States,* 432 A.2d 1212, 1218 (D.C.App.1981), shows that the codefendants speculated about robbing Matthews because he refused them liquor on credit. In the early hours of October 9, 1979, they were observed entering Carl Marks' apartment with several items of property and money, all of which were of the sort that witnesses testified Matthews kept in his apartment. The codefendants discussed their prowess at overpowering the bootlegger, and one codefendant later expressed surprise that the man had been "killed." Later that morning, witnesses found Matthews' strangled body on the sofa in his apartment. His injuries were consistent with a sudden and unexpected attack. The types of items that Hall testified the codefendants carried the night before were discovered missing from Matthews' apartment. From this evidence, we can say that reasonable minds could fairly conclude beyond a reasonable doubt that appellant was guilty of the charged offenses.[8]

## V.

We conclude that, aside from a merger problem, no ground exists for reversing appellant's convictions. Because the felony murder and the underlying felony (robbery) merge, see note 7 *supra,* we must affirm subject to remand with instructions to vacate the robbery conviction and to resentence appellant accordingly.

*So ordered.*

denied, 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981). *Since collateral consequences "in reality attach to the conviction," Harling v. United States,* 460 A.2d 571 (D.C.App.1983), we remand to the trial court with instructions to vacate the conviction, not just the sentence, for the underlying felony (robbery) and to resentence appellant accordingly. *Cf. Tribble v. United States,* 447 A.2d 766, 775 (D.C.1982) (concurrent sentence for underlying felony vacated).

8. We disagree with appellant's final assertion, that the trial judge erred in omitting the bracketed words to the standard informer's testimony instruction in regard to Hall's testimony. The instruction reads:

   ... An informer's testimony should be examined by you with greater care than the testi-

mony of an ordinary witness. You should scrutinize it closely .... You should [receive such testimony with suspicion and] act upon such testimony with caution....

Criminal Jury Instructions for the District of Columbia, No. 2.23 (3d ed. 1978). The bracketed portion is not required in every case. *See Fletcher v. United States,* 81 U.S.App.D.C. 306, 307, 158 F.2d 321, 322 (1946). Hall's testimony was sufficiently corroborated (*e.g.,* the items he described the codefendants carrying were similarly described by two witnesses who described items missing from Matthews' apartment), and the informer instruction actually given adequately addressed the matter. The trial court did not abuse its discretion in omitting the bracketed phrase.