Cordell **ROBINSON**, Appellant,

v.

**UNITED STATES,** Appellee.

No. 91–508.

District of Columbia Court of Appeals.

Argued Feb. 6, 1992.
Decided April 17, 1992.

---

Diane K. Dildine, Washington, D.C., appointed by the court, for appellant.

Edward G. Burley, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Thomas C. Black, and Kenneth C. Kohl, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before STEADMAN and KING, Associate Judges, and GALLAGHER, Senior Judge.

KING, Associate Judge:

Appellant seeks reversal of his conviction of armed robbery, D.C.Code §§ 22–2901, –3202 (1989), as an aider and abetter. He contends the trial court erred in (1) admitting, over objection, statements made by the principal after the robbery, (2) sustaining the government's objection to a portion of defense counsel's closing argument, and (3) denying his motion for judgment of acquittal. We affirm.

### I.

Appellant and Carlos Coles were in the apartment of Kim Lee and Brenda Fortson on the evening of February 8, 1990, in the Northeast section of the city. Just before 8:00 p.m., Coles carried a telephone from Lee's bedroom into another bedroom where appellant and Fortson, who was appellant's girlfriend, were located. Coles dialed a number, engaged in a brief conversation, and hung up. He then had a conversation with appellant. Shortly thereafter, the phone rang. Either appellant or Coles answered it, spoke briefly, and hung up. Coles then left, and appellant followed "some minutes" later. Appellant told Fortson that he was going to his father's house.

Meanwhile, just before 8:00 p.m., a local Domino's Pizza received a telephone order for pizza to be delivered to an address located a few blocks from the Lee/Fortson apartment. The verification phone number given by the caller was the phone number of the Lee/Fortson apartment. Shortly after the order was received, a Domino's employee dialed the number provided by the caller and verified the order. Samuel May, an employee of Domino's then depart-

ed to deliver the pizza. Upon arriving at the address provided by the caller, May learned that no one there had placed the order.

As May headed back to his car, he observed two young males, one taller than the other, approaching from an alley. When May reached his car, he placed his carrying bag, which contained the pizzas, on top of the hood. At that point the taller man (allegedly Coles) shoved a gun in May's face and pushed him across the street. May observed the shorter man (allegedly appellant) taking the pizzas out of the bag.[1] Coles then took cash and a beeper from May. Coles waited until the shorter man departed; he then struck May in the face and ran away.

Less than half an hour after departing the Lee/Fortson apartment, Coles returned. He entered Lee's bedroom carrying two boxes of pizza, which he placed on the television set. He then removed his coat. Present in the bedroom were Lee, Fortson, four children, and another adult male. Lee made remarks indicating that she knew Coles had just stolen the pizzas. Fortson testified that Coles then "started talking to us about what happened" and bragged about robbing the Domino's pizza man. Fortson also testified that Coles then took out a BB pistol, fired it into his coat, and then placed the pistol back under his coat.

Less than five minutes after Coles arrived, appellant entered the bedroom[2] and immediately stated, "Man, I really had to run fast." In response, Coles said, "I don't know what you're bitching for. I did all the work." Shortly thereafter, Coles produced a beeper. Appellant said, "Give it to me." Coles handed appellant the beeper and said, "Man, if I give you my beeper

don't give it away. Give it back to me." The beeper then signaled, and Coles said, "Don't call because it might be Domino's Pizza people trying to call back to trace the call." Lee testified that Coles then removed the gun from under his coat and displayed it to her. She told Coles to put it away, and he placed it back under his coat.

At some point either during or after the conversation, Coles opened one of the pizza boxes. After one pizza was eaten, Coles and appellant left the room with Coles carrying the remaining uneaten pizza. Approximately half an hour later, police officers arrived. Neither appellant nor Coles was in the apartment at that time.

The police recovered two empty pizza boxes which were later subjected to fingerprint analysis.[3] Latent prints from the bottom of one pizza box were identified as appellant's left ring finger and left index finger. In addition, latent prints from the top of the same box were identified as appellant's right thumb, right middle finger, and right ring finger. Finally, a latent print from the top of the second box was identified as appellant's left index finger. No testimony was presented that appellant ever touched the pizza boxes in the apartment. Fortson testified that only Coles handled the pizza boxes.

## II.

■ Kim Lee was permitted to testify, over objection, about the three statements made by Carlos Coles in appellant's presence after they returned to the apartment. Those statements, at minimum, circumstantially implicated Coles as the principal participant in the armed robbery.[4] In addition, the statements, together with remarks made by appellant in conjunction with the

---

1. At trial, May testified that it was "possible" that the shorter man was appellant.

2. Appellant was not wearing a coat when he entered, and it is not clear from the record exactly when he returned to the apartment.

3. The boxes were identified by May as those taken in the robbery.

4. Under the government's theory, Coles was the principal and appellant was the aider and abet-

tor. In order to establish appellant's guilt, the government was required to prove beyond a reasonable doubt that (1) someone committed the offense, (2) the defendant assisted or participated in the commission of the offense, and (3) the defendant did so with the intention of furthering the commission of the offense. *E.g.*, *Dew v. United States*, 558 A.2d 1112, 1118 (D.C. 1989).

statements, support an inference that appellant was the accomplice in the robbery.

 Coles entered Lee's bedroom at approximately 8:30 p.m. carrying the pizzas. Appellant entered a few minutes later remarking, "Man, I really had to run fast." Coles responded, *"I don't know what you're bitching for. I did all the work."* [Statement 1.] Soon thereafter, Coles took out the beeper. Appellant asked Coles to give it to him. In response Coles stated, *"Man, if I give you my beeper don't give it away. Give it back to me."* [Statement 2.] As appellant was examining the beeper, it "went off." Coles then stated, *"Don't call because it might be Domino's Pizza people trying to call back to trace the call."* [Statement 3.]

At trial, appellant objected to the admission of all of Coles' statements on the grounds that they were inadmissible hearsay. The trial court ruled that the statements made by Coles in appellant's presence were admissible as adoptive admissions. On appeal, appellant challenges the admissibility of only statement 1 and statement 2 on the grounds that they were inadmissible hearsay and, therefore, the trial court erred in admitting them. The government contends that both were properly admitted as adoptive admissions by appellant. We agree.[5]

 When a defendant clearly adopts the statement of another that is inconsistent with the defendant's position at trial, that statement is admissible against the defendant as an adoptive admission. *Brown v. United States,* 464 A.2d 120, 123 (D.C.1983). "To constitute an admission by silence, the statement must be made in the defendant's presence and hearing, and the defendant must actually understand what was said and have an opportunity to deny it." *United States v. Sears,* 663 F.2d 896, 904 (9th Cir.1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982), *quoted in Brown, supra,* 464 A.2d at 123. Thus, if "a reasonable jur[or] could conclude from the context of the conversations that appellant unambiguously assented to [it,]" the statement is admissible. *Brown, supra,* 464 A.2d at 124.

There can be no doubt that the appellant heard all the statements made by Coles— the first two were made in response to his own remarks and the third occurred moments later when the beeper signaled. Moreover, Coles' comments were loud enough to be heard by others present in the room with Coles and appellant. Nor can there be any serious question that appellant understood the import of Coles' statements and that he was able, if he wished, to deny the implication that he was involved with Coles in the robbery. The conversation occurred within minutes of the robbery, the atmosphere was friendly, and appellant was free to express some indication of noninvolvement if that was the case.

Moreover, we have held that a "failure to object or deny a codefendant's statements at the time they were made is especially probative of the defendant's acquiescence if they are made in the presence of a third party who was not an accomplice in the crime." *Id.* at 124 (citing *United States v. Schroeder,* 433 F.2d 846, 850 (8th Cir.1970), *cert. denied,* 401 U.S. 943, 91 S.Ct. 951, 28 L.Ed.2d 224 (1971)). The conversation took place in the presence of others who were not involved in the offense and at a time when appellant was completely free to disclaim his own involvement. Appellant did not do so. Instead, he was unconcerned with Coles' inclusion of him as a participant in the robbery. On these facts, therefore, the jury could properly conclude that appellant's silence in the face of Coles' statements amounted to an unambiguous assent

---

5. The government also contends for the first time on appeal that neither statement is hearsay because Coles did not intend for either of them to be an assertion and because they were not offered to prove the truth of the matters asserted. Hearsay is "testimony in court ... of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value on the credibility of the out of court asserter." *Harley v. United States,* 471 A.2d 1013, 1014 (D.C.1984) (citations and internal quotation marks omitted). In light of our conclusion that the trial court correctly ruled that the statements were admissible as adoptive admissions, we need not decide this contention.

to Coles' implication that he was the principal and appellant was the accomplice in the robbery.

Appellant's reliance on *Holmes v. United States*, 580 A.2d 1259 (D.C.1990), is misplaced. In *Holmes*, the comments by the alleged accomplice (Hood) that were asserted to be adoptive admissions occurred during the course of a telephone conversation between Holmes and Hood. Hood, who had been apprehended immediately after the offense for which Holmes was on trial, agreed to cooperate with the government. More than two weeks later, he initiated a telephone call to Holmes. A tape recording of the conversation between the two was admitted as evidence at Holmes' trial. Holmes objected to its admission on the grounds that Hood's remarks, which incriminated Holmes, were hearsay. The government asserted that Hood's remarks were admissible as adoptive admissions. The court disagreed and concluded that no reasonable person could find that Holmes unambiguously assented to Hood's incriminating statements. *Id.* at 1265.

The nature and circumstances of the conversation in *Holmes* were very different from what occurred in this case. In *Holmes* the conversation took place several weeks after the offense which was the subject of the conversation. Whether Holmes even understood that Hood's remarks referred to the offense for which he was on trial was not at all clear. Holmes' comments during the conversation suggested that he had little knowledge of and no connection with the incident. Moreover, Hood's remarks during the taped conversation imply that he and a person other than Holmes, committed the offense, and Holmes seemed to be denying participation rather than implicitly admitting any involvement. In addition, Hood himself testified that Holmes neither admitted nor denied involvement in the offense during the course of the conversation.

We also note that the tenor of the conversation in this case differed substantially from what occurred in *Holmes*. Hood was attempting to elicit admissions from Holmes, as required by his agreement with the government. Consequently, Hood's comments to and inquiries of Holmes were laden with leading questions. Under those circumstances, the court could not conclude that Holmes' one word responses to Hood's inquiries amounted to an unambiguous assent to what Hood was saying. *Id.* at 1264–65.

In contrast, when viewed in context, Coles could only have been talking about his role as principal in the robbery, *i.e.*, "I did all the work," when he responded to appellant's initial remark about having to run fast. The conversation took place moments after the crime following a sequence of events that overwhelmingly supports the conclusion that both participants in the conversation committed that crime. Specifically, appellant was present when Coles made a phone call at the same time Domino's received the order for pizza, he was also present when the phone rang at the verification telephone number at the time Domino's called that number to confirm the pizza order, both appellant and Coles left the apartment just prior to the robbery, the robbery took place a few blocks away, and Coles returned to the apartment just after the time of the robbery carrying boxes of pizza moments before appellant joined him there.

When Coles stated, "I did all the work," appellant did not respond. The absence of some reaction disavowing knowledge of the enterprise in which Coles implied the two had participated indicates that appellant fully understood Coles' remark and assented to it. When the stolen beeper was displayed by Coles, appellant's interest in it was natural for one who had just participated in its theft. Again, appellant's silence indicates that he assented to Coles' assertion that it was "his" beeper, *i.e.*, he was the one who actually took it from May.[6]

---

6. In addition, Coles' statement after the beeper signaled cried out for a response of some sort from appellant giving some indication of ignorance, confusion, or puzzlement if he was not involved in the theft of the beeper or if he knew nothing of how Coles acquired it. Appellant's silence and indifference in the face of such a comment spoke volumes.

This case is closer to the events that occurred in *Brown, supra*, which was a prosecution for a murder alleged to have been committed by Brown, Poston, and Graves in the course of a robbery. There, an uninvolved witness (Hall) testified that he was in the presence of all three defendants before and after the offense. The first challenged statement occurred when Poston, who was apparently angry at the deceased for not advancing him credit for liquor, stated, "[w]e should rob [him]." Brown responded, "[w]hy not?" *Id.* at 122. The second statement occurred after the murder when Graves complimented Brown for a job well done and said that Brown had "rushed the man on time." Brown's only response was to laugh. *Id.* at 122. With respect to the first statement, this court held that Brown's response was an acceptance of Poston's suggestion that they rob the victim. With respect to the second statement, this court held that Brown's "failure to deny Graves' expressed admiration, especially in the presence of an uninvolved third person (Hall), [was] evidence that the charge was truthfully made and impliedly admitted by [Brown]." *Id.* at 125.

Here, appellant began the dialogue by making the remark about having to run fast. Coles then immediately responded that appellant had nothing to complain about because he (Coles) had done all the work. Appellant neither responded nor gave any indication that he did not understand what prompted Coles' remark. Shortly thereafter, Coles displayed the stolen beeper and appellant asked to see it. Coles handed it over with the condition that appellant not give it to anyone else. This was then followed by Coles' remark when the beeper signaled. The entire conversation took place in front of others who were not involved in the robbery. Under these circumstances, the jury could reasonably conclude that appellant unambiguously assented to Coles' remarks, remarks which implicated Coles and appellant. in the robbery and identified each as the principal and accomplice respectively. Accordingly, the trial court did not err in allowing the

statements into evidence as adoptive admissions.

### III.

■ Appellant also contends the trial court erred in sustaining the government's objection to a portion of defense counsel's closing arguments relating the theory of the defense. A review of the transcript reveals that the trial court understandably misinterpreted appellant's argument when it sustained the objection. However, trial counsel was permitted to otherwise argue the defense theory, and the trial court specifically instructed the jury on that point. Consequently, we find no error.

During closing, appellant's trial counsel noted that three pizzas were stolen from May, but only two boxes were recovered from the Lee/Fortson apartment. Defense counsel then stated "[a]nd the Defense has a theory about that, Defense has a theory, and that is that another young man was used to assist—" At that point, the government objected on the grounds that there was no evidence to support such a theory. The trial court sustained the objection.

■ The ensuing colloquy revealed that the trial court had sustained the objection on the mistaken belief that appellant was attempting to argue that there were three robbers not two.

> [DEFENSE COUNSEL]: I'm not suggesting there was a third person. I'm suggesting that there was a person other than my client.
> THE COURT: Oh, yes, I think that it's quite appropriate if I instruct the Jury that the Defense's theory is that the Government—is that there was a person not your client who was the second person.
> [DEFENSE COUNSEL]: Okay. I think we're talking about semantics then because when I'm talking about a third person I'm talking about a person other than my client.

The trial court subsequently instructed the jury that appellant's theory was that someone other than appellant was the second

robber. Moreover, counsel was free to argue, and in fact did argue, that someone other than appellant was the accomplice. Since appellant's theory of the case was adequately presented to the jury through both counsel's argument and the trial court's instruction, we find no error. *See West v. United States*, 604 A.2d 422, 427–28 (D.C.1992).

## IV.

Appellant also challenges the sufficiency of the evidence. We must view the evidence in the light most favorable to the government, give due regard for the jury's right to weigh the evidence and assess credibility, and make no distinction between direct and circumstantial evidence. *Thompson v. United States*, 567 A.2d 907, 908 (D.C.1989).

■ The government presented strong circumstantial evidence that appellant was Coles' accomplice in the robbery. Both were together in the Lee/Fortson apartment when Coles placed a telephone call at the time Domino's received an order by telephone for pizza. The telephone number at the Lee/Fortson apartment is the same number given to Domino's by the caller for verification of the order. That number was dialed by Domino's at the time the phone rang in the Lee/Fortson apartment. Coles and appellant left the Lee/Fortson apartment shortly before the time May was robbed a few blocks away by two young men. Both returned to the apartment a short time later. Coles was carrying pizza boxes later identified as two of the boxes that were stolen. Lee and Fortson testified that Coles acknowledged stealing the pizzas. May testified that the accomplice removed the pizza boxes from the bag when they were being stolen. Appellant's fingerprints were recovered from the top and bottom of those boxes, and there was no evidence that appellant touched the boxes while he was inside the apartment. Thus, the jury could reasonably infer that appellant left his prints on the boxes when they were removed from the carrying bag. Finally, the jury could also infer from Coles' statements and appellant's adoption of those statements that Coles was the principal and appellant was the aider and abettor. Therefore, these facts, taken together, persuade us that there was sufficient evidence to sustain appellant's conviction. *E.g., Glass v. United States*, 395 A.2d 796, 806–807 (D.C.1978).

Accordingly, the judgment of the trial court is

*Affirmed.*